18 Cal.Rptr. 316]

[Crim. No. 8074.   Second Dist., Div. Three.   Jan. 9, 1962.]

In re JOSEPH HIGGINS on Habeas Corpus.

(1)

John L. Carr for Petitioner.

Harold W. Kennedy, County Counsel, and Robert C. Lynch, Deputy County Counsel, for Respondent Sheriff of Los Angeles County.

Trippet, Yoakum & Ballantyne for Real Party in Interest Marblehead Land Company.

FRAMPTON, J. pro tem.*—Petitioner seeks his release on habeas corpus on the ground that respondent court acted in excess of its jurisdiction in finding him guilty of contempt of court and imposing a judgment of fine and imprisonment based thereon.

Petitioner was a defendant in a civil action brought in respondent court, in which Marblehead Land Company (the real party in interest) was plaintiff. The action was brought to quiet title, for injunctive relief and for damages arising out of the alleged violation of deed restrictions by the defendant (petitioner). Judgment was rendered in favor of plaintiff and against petitioner. The judgment was entered June 29, 1960, and provided, amongst other things, that petitioner was to remove from the real property described in the complaint a certain converted bus, and he was further enjoined from maintaining the bus on such property. It appears from the record that plaintiffs below had sold the land to one Carl A. Dorschner, petitioner's predecessor in interest.

The property was subject to the following covenants, conditions and restrictions: "(1) Said lands shall be used for residential purposes only in detached private, single-family residence dwellings and appurtenant customary out-buildings and garages only and no buildings or structures other than such structures shall be erected or maintained thereon; . . . Said lands shall not be used for other than single-family resi-

*Assigned by Chairman of Judicial Council.

dence purposes in detached private single-family residence dwellings.

"(2) Buildings constructed elsewhere shall not be placed or maintained on said lands; temporary buildings, shacks, garages, barns, trailers or tents shall not be used for residence, over-night sleeping or housekeeping purposes.

"(3) Prior to commencement of any excavation or construction of any dwelling house or other structure or to the remodeling of any structure theretofore completed which affects the external appearance thereof there shall first be filed with the architectural committee of the grantor . . . two complete sets of building plans and specifications and work shall not commence unless the architectural committee shall endorse the plans as being in compliance with the restrictions and are otherwise approved by the committee.

"(4) No dwelling house shall be erected or maintained on the lands having a ground floor area of less than 1,200 square feet."

The deed also provided that in the event the grantee or his successors in interest or assigns violated or attempted to violate any of the covenants or restrictions before January 1, 1970, grantor might institute proceedings against the person or persons so violating or attempting to violate said restrictions to prevent them from doing so, to cause the violation to be remedied and to recover damages for said violation, and cause said offending structures to be immediately removed, and that a breach of said restrictions and a continuation thereof for 30 days after notice in writing to remedy the same should cause said property to revert to grantor.

The court in the quiet title action found that the petitioner in 1958 had acquired an interest in the westerly 50 feet of the northerly 150 feet of the land in question, under a written contract with the parents of his wife; that he had both actual and constructive notice of the deed restrictions on said property; that he violated said restrictions in that on or about July 1958 he placed on said land scrap lumber, pieces of water pipe, sand, rocks, bricks, a large butane tank, and has continuously maintained on said land the above items to the date of the conclusion of the trial (June 28, 1960) ; that in July 1958 he placed on the land a large school bus, which had been converted for use as a house trailer, and which he used from time to time, up to the conclusion of the trial, for housekeeping and overnight sleeping. Judgment was entered on June 29, 1960, in part as follows: ". . . [S]aid defendant is

specifically enjoined and restrained from maintaining on said premises any converted school bus, surplus army truck, the existing septic tank and its leaching lines, the existing miscellaneous articles of building equipment such as lumber, pipe, sand, rock and brick, and the foundation forms which were constructed by defendant on a portion of said premises. 4. Defendant is ordered forthwith to cease and desist (and to continue in the future until January 1, 1970, to cease and desist) from in any manner violating the covenants, conditions subsequent and restrictions referred to in the deed set forth in paragraph 3 hereof, and to remove forthwith from the premises referred to in paragraph 3 hereof said converted school bus, said surplus army truck, said septic tank and its leaching lines, all of the miscellaneous materials and debris now located on said property, including but not limited to lumber, water pipes, sand, rock and brick, and also said foundation forms which were constructed by defendant on a portion of said premises.''

The record of the trial court further shows that between October 4, 1960, and June 2, 1961, three orders to show cause *in re* contempt were obtained by the real party in interest against petitioner, all relating to the within subject matter, two of which were discharged for lack of service. Petitioner, upon the hearing on the third order to show cause, was adjudged not guilty of contempt. On June 2, 1961, an order to show cause why petitioner should not be adjudged guilty of contempt of court for his willful disobedience of the judgment was issued on behalf of the real party in interest and hearing thereon was held June 28, 1961. At the conclusion of this hearing the court found petitioner to be in contempt of court ''by reason of his continuing refusal to remove the bus as the Court ordered him to do.'' Imposition of judgment and sentence was continued to July 17, 1961. On the latter date, the following occurred: ''It is the sentence of the Court that the defendant Joseph Higgins is guilty of contempt, and he is fined the sum of $100 for the offense. The Court further orders that the $100 fine assessed is suspended by reason of the defendant Joseph Higgins having made arrangements to have the bus removed from the property. The Court directs the record to show that, although the defendant neither owns the bus or the property, he has caused the bus to be removed; thereby accomplishing one of the objectives of the litigation.''

On September 14, 1961, an order to show cause why petitioner should not be adjudged guilty of contempt of court

for having willfully disobeyed the order and judgment entered June 29, 1960, was issued at the instance of the real party in interest and hearing thereon was set for October 13, 1961. The cause was continued and heard on November 17 and 27, 1961, on which occasions the court heard the testimony of five witnesses, including petitioner. At the conclusion of the hearing the court made the following order: ''The Court finds the citee, defendant Joseph Higgins is guilty of wilfull contempt in that he has at all times since July 13, 1961 maintained the bus on a portion of the property known as the Dorschner parcel contrary to the injunction contained in the final judgment herein signed and filed June 28, 1960, entered June 29, 1960, Book 3986, Page 112; and that he, Joseph Higgins, did on July 13, 1961 participate in moving the said bus to a site on that property. Now, therefore, it is the judgment of the Court that Joseph Higgins be imprisoned in the Los Angeles County Jail for a period of 5 days and, in addition, that he be fined the sum of $500.00, and in the event the fine is unpaid, that he, Joseph Higgins, be confined in the County Jail to serve (1) one day therein for each $25.00 of the fine which is not paid.''

Execution of the judgment was stayed until December 8, 1961, and counsel for plaintiff (real party in interest) was directed to prepare and submit a formal judgment. Such formal judgment was signed and filed December 1, 1961. It constitutes the commitment upon which petitioner was imprisoned, the sufficiency of which is questioned herein. The commitment reads as follows: '' [Title of Court and Cause] On October 13, 1961, an Order to Show Cause why defendant JOSEPH HIGGINS should not be held in contempt of Court for failure to obey the Judgment of this Court signed on June 28, 1960, and entered on June 29, 1960, in Book 3986, page 112 of Judgments, came on for hearing before the Honorable Gordon L. Files, Judge Presiding, in Department 65 of the above entitled Court;

''Trippet, Yoakum & Ballantyne, by John A. Dundas II, appeared as attorneys for plaintiff MARBLEHEAD LAND COMPANY;

''Defendant JOSEPH HIGGINS was present in Court, appearing in propria persona;

''Plaintiff, by its counsel, having requested a continuance and the Court having heard argument thereon, the matter was continued by the Court with the consent of defendant to

November 17, 1961. Leave was granted to defendant to file a counterdeclaration or other documents with the Court on or before said date; defendant did file a counterdeclaration on or about said date;

"The matter was further argued and heard on November 17, 1961. Defendant moved to quash further proceedings, which motion was denied;

"Prior to receiving any testimony in the matter, the Court advised defendant of his right to be represented by counsel and that if defendant requested it, the Court would appoint counsel for him. Defendant replied that he understood he had a right to counsel, but that he preferred to represent himself. Defendant entered a plea of not guilty to the charge of contempt. Thereafter testimony, both oral and documentary, was offered by plaintiff and defendant and received by the Court;

"Testimony continued until approximately 4:30 p. m. on November 17, 1961, at which time the Court indicated it felt the matter could not be concluded that day and should be continued. After discussion, the matter was continued to November 27, 1961, with the consent of defendant and counsel for plaintiff;

"The matter was further argued and heard on November 27, 1961, at which time both oral and documentary evidence was offered by defendant and received by the Court. Both parties thereafter presented arguments to the Court;

"The Court having fully investigated the charge of contempt and the matter having been submitted upon the Declarations of A. H. Phillips, F. B. Yoakum, Jr., Charles Holt, M. Quiros, the counterdeclaration of Joseph Higgins, oral and documentary evidence and the argument of the parties;

"The Court being fully advised in the premises and having found as follows:

"(a) That a Judgment in the above entitled matter was signed on June 28, 1960, and entered on June 29, 1960, in Book 3986, page 112 of Judgments, and that said Judgment has become final;

"(b) That a true copy of said Judgment was personally served upon defendant JOSEPH HIGGINS on July 8, 1960;

"(c) That on September 14, 1961, this Court issued its Order to Show Cause why defendant JOSEPH HIGGINS should not be adjudged guilty of contempt of Court and punished accordingly for wilfully disobeying said Judgment;

"(d) That said Order to Show Cause re Contempt issued by this Court on September 14, 1961, together with supporting Declarations, was duly and properly served on defendant JOSEPH HIGGINS on October 9, 1961;

"(e) That at all times since the entry of said Judgment up to and including the present time, defendant JOSEPH HIGGINS has been and now is able and capable of complying with the terms thereof;

"(f) That defendant JOSEPH HIGGINS has at all times since July 13, 1961, maintained the converted school bus referred to in said Judgment on a portion of the property described in the deed from Marblehead Land Company to Carl A. Dorschner recorded in Book 21956, page 259, Official Records of Los Angeles County;

"(g) That on July 13, 1961, defendant JOSEPH HIGGINS did personally participate in moving said converted school bus to its present site;

"(h) Said converted school bus is now located on a portion of the property described in said deed to Carl A. Dorschner;

"(i) The bus in question has not, since July 8, 1960, left the property described in the deed to Carl A. Dorschner, except for a period of less than one day, approximately one year ago, when said bus was placed on the highway adjoining said property;

"(j) On July 13, 1961, said bus was moved to a site then standing in the name of defendant's wife;

"(k) At all times since July 13, 1961, defendant knew of his own knowledge of the location of said bus.

"Good cause appearing therefor, IT IS ORDERED, ADJUDGED AND DECREED:

"1. That defendant JOSEPH HIGGINS is guilty of wilful contempt of this Court in that he has at all times since July 13, 1961, maintained said bus on a portion of the property described in said deed to Carl A. Dorschner contrary to the injunction contained in the final Judgment herein signed and filed June 28, 1960, entered June 29, 1960, Book 3986, page 112; and in that he, JOSEPH HIGGINS, did on July 13, 1961, participate in moving the said bus to a site on that property.

"2. That defendant JOSEPH HIGGINS be committed on December 8, 1961, by the Sheriff of this county, to the County Jail, there to be kept for the period of five full days of 24 hours each, making a total of 120 hours from the time of commitment;

"3. That defendant JOSEPH HIGGINS be fined Five Hundred Dollars ($500.00) and that said defendant pay said fine to the Clerk of this Court. For nonpayment of said fine, said defendant shall be further imprisoned in the County Jail of this county one full day for each Twenty-five Dollars ($25.00) unpaid;

"4. That plaintiff have judgment for its costs incurred herein in the sum of $47.70.

"The clerk is ordered to enter this judgment.

"Dated December 1, 1961.

GORDON L. FILES

JUDGE"

Petitioner's position here is as follows: He contends that at a hearing on an order to show cause *in re* contempt regarding only the bus, petitioner was found guilty and was on July 17, 1961, as punishment, fined in the sum of $100; that at the same time the respondent court determined that petitioner had sold all of his interest in the real property involved and the bus; that since petitioner neither owned nor controlled the real property or the bus, he had no legal right or capacity to comply with the judgment of June 29, 1960, and therefore the respondent court, in finding petitioner guilty of contempt on November 27, 1961, acted in excess of its jurisdiction.

A transcript of the oral proceedings below has not been furnished. With consent of both counsel, this court has examined the entire file in the court below and has quoted from parts thereof.

The minute order of July 17, 1961, hereinbefore set forth, no doubt was predicated upon representations made to respondent court by petitioner at the time set for the pronouncement of judgment and sentence. It was not part of the hearing on the charge of contempt, as this had been concluded on June 28, 1961. It was no more than a reason given by the court at the time of the pronouncement of sentence why the court suspended the imposition of the fine imposed. Under these circumstances, such statement may not be considered as a finding made or a judgment rendered, binding on the court or the parties, as might be the case had it been made as a finding or rendered as a judgment in the course of an adversary proceeding.

The affidavits upon which the order to show cause of September 14, 1961, was issued disclose that the bus was moved from one place on the Dorschner property to another location thereon near the beach from which it could not be readily seen from the highway, and that its latter location was not discovered by one affiant until about July 18, 1961, when it was brought to his attention by the owner of an adjoining parcel of land. In another such affidavit the affiant states that on or about July 13, 1961, he saw petitioner, with the help of others, move the bus down to the beach in front of and below its prior location, and that its present location is illustrated by a photograph attached to his affidavit; that on August 21 and 22, 1961, he observed petitioner assisting in the installation of plumbing or water lines to the bus in its new location. Another such affidavit of a licensed land surveyor disclosed that the bus, in its new location, was situated on land encompassed within the description contained in the deed from the Marblehead Land Company (real party in interest) to Dorschner.

From the foregoing it is clear that the conduct of petitioner upon which the respondent court issued the order to show cause of September 14, 1961, was alleged to have occurred subsequent to the determination on the order to show cause heard June 28, 1961.

The order to show cause of September 14, 1961, was based upon the alleged disobedience by petitioner of the judgment of June 29, 1960, which not only ordered him to remove the bus, amongst other things, but also enjoined him from maintaining the bus on the real property described and referred to as the Dorschner property. ■■■ The persons who signed the affidavits in support of the order to show cause of September 14, 1961, appeared and testified at the hearing on such order, and in the absence of the transcript of the oral proceedings we assume that their testimony was substantially the same as that contained in their affidavits. ■■■ Under this state of the record, the respondent court did not exceed its jurisdiction in finding that petitioner's conduct between June 28, 1961, and September 14, 1961, in helping to move the bus from one place on the property to another place on the same property and in connecting plumbing or water lines to the bus in its new location was in direct violation of the injunction against maintaining the bus on such property. If he was not acting in his own behalf as owner, he was aiding, assisting and abetting another in violation of the court's order.

■ The scope of the inquiry on habeas corpus extends to the entire record of the court below and to the evidence itself, when necessary, to determine jurisdiction. This inquiry, of course, cannot go beyond the question of jurisdiction and the review of the evidence is limited to the sole purpose of determining, first, whether jurisdiction existed; and, second, whether jurisdiction was exceeded. (*In re Lake,* 65 Cal.App. 420 [224 P. 126]; *In re Lande,* 96 Cal.App.2d 926 [216 P.2d 909]; *In re Ferguson,* 123 Cal.App.2d 799 [268 P.2d 71].)

■ It is clear from an examination of the affidavits in support of the order to show cause of September 14, 1961, that the respondent court had jurisdiction to hear and determine the matter of contempt. Assuming that petitioner, upon the hearing, testified in substance as shown by his affidavit filed November 16, 1961, such testimony, at most, would have created a conflict in the evidence relating to his ownership of the real property and the bus; the location of the bus, that is, whether it was in fact situated upon the Dorschner parcel; whether petitioner participated in moving the bus and whether he assisted in connecting plumbing or water lines to the bus in its last location. The power to weigh the evidence rests with the trial court, and the review thereof by this court is limited to the determination as to whether there was any substantial evidence before the trial court to sustain its jurisdiction. (*Bridges* v. *Superior Court,* 14 Cal.2d 464 [94 P.2d 983], at 485; *In re Burns,* 161 Cal.App.2d 137 [327 P.2d 617], at 142; *Ex parte Ewell,* 71 Cal.App. 744 [236 P. 205], at 746; *In re Foss,* 123 Cal.App. 542 [11 P.2d 676]; *In re Hallinan,* 126 Cal.App. 121 [14 P.2d 797]; *In re Larrabee,* 29 Cal.App.2d 240 [84 P.2d 224]; *In re Ferguson,* 123 Cal. App.2d 799 [268 P.2d 71], at p. 803.)

Without resort to the record of the oral proceedings had at the hearing on the order to show cause, there is a sufficient showing in the record before us to support the conclusion that respondent court did not act in excess of its jurisdiction.

The writ is discharged and petitioner is remanded to the custody of the Sheriff of Los Angeles County in execution of the judgment.

Shinn, P. J., and Ford, J., concurred.