[No. C039495. Third Dist. Apr. 8, 2003.]

JOHNNY KING, Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

930

**COUNSEL**

Stephen Greenberg, under appointment by the Court of Appeal, for Petitioner.

No appearance for Respondent.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, Stephen G. Herndon, Rachelle A. Newcomb and Paul E. O'Connor, Deputy Attorneys General, for Real Party in Interest.

**OPINION**

**MORRISON, Acting P. J.**—"In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." (U.S. Const., 6th Amend.) Because it is essential to a fair trial, the right to counsel has long been considered "fundamental." (*Gideon v. Wainwright* (1963) 372 U.S. 335, 343 [83 S.Ct. 792, 795, 9 L.Ed.2d 799, 804, 93 A.L.R.2d 733].) Despite the fundamental nature of this right, it is not absolute. In this case

we consider whether an accused may forfeit his right to counsel by serious misconduct, such as violence and threats of violence against a succession of appointed counsel.

Balancing the great importance of the right to counsel against the need to protect counsel and the orderly administration of justice, we conclude an accused may forfeit his right to counsel by a course of serious misconduct towards counsel that illustrates that lesser measures to control defendant are insufficient to protect counsel and appointment of successor counsel is futile. In rare cases where the misconduct is so serious that lesser measures are patently inadequate to protect counsel, an accused may forfeit his right to counsel without employing the patently inadequate lesser measures. Forfeiture of counsel should be a court's last resort and generally forfeiture should occur only after lesser measures to control defendant, including but not limited to a warning and physical restraints or protections, have failed. Further, forfeiture of counsel can occur only after a hearing at which defendant is afforded full due process protections, including the assistance of counsel.

In this case, Johnny King engaged in a pattern of serious misconduct, violence and threats of violence, against a succession of court-appointed attorneys. However, the record does not reveal what measures to control and prevent King's violence, such as restraining him, were attempted. Moreover, the trial court found King forfeited his right to counsel at a hearing in which King's attorney not only did not represent King's interests, but argued against King and in favor of forfeiture. Accordingly, we reverse the order of forfeiture of counsel and remand for further proceedings.

## BACKGROUND

In 1981, Johnny King was convicted of kidnapping, robbery, rape, and assault with intent to commit murder, with personal use of a firearm. He was sentenced to life in prison.

In 1999, King was charged with two counts of battery on a noninmate and two counts of aggravated battery by gassing on a noninmate. The complaint alleged he had three strike priors. Paul Comiskey was appointed to represent King at his arraignment. Comiskey later withdrew as counsel and the complaint was amended to add a fifth count of battery on Comiskey and to allege four strike priors. King then had three other appointed lawyers, each of whom was relieved.

The trial court held a hearing, outside the presence of the prosecutor, to determine if King had forfeited his right to counsel. King's various lawyers

testified to King's assaultive and threatening behavior. King head-butted his first attorney, Paul Comiskey, at the arraignment after Comiskey waived the reading of the complaint over King's objection. The incident was witnessed by the lead bailiff.

Michael Long was appointed in March 1999 to represent King. He visited King in prison on March 12, 1999, and they had a lengthy discussion. When Long told King he would not file all the motions King wanted, or that he was not as excited about their merits as King, King told Long he would get someone on the outside to kill Long. King told Long that some day Long would step out of his car and somebody would be waiting for him. Long asked King why he thought Long would do a better job working under a death threat and King responded, "[Y]ou fuck me, I will fuck you." Long gave the case back to the indigent defense panel that day due to his concerns about personal safety.

Michael Aye picked the case up from Long, who told him King had made threats against his life. Aye met King at Folsom prison and told him he had an investigator. King asked if the investigator had a police background and Aye answered he was a medically retired California Highway Patrol officer. King said, "once a pig, always a pig" and he would not have any "pigs" working on his case. Aye got another investigator.

Aye testified that King made lots of excessive and unusual demands. King made statements to the court that did not coincide with Aye's recollection of their conversations. At the same time, King pulled Aye aside and said he was threatening Aye's life. Aye had the impression that King was doing this so Aye would declare a conflict and another attorney would be appointed. Aye declared a doubt as to King's competency under Penal Code section 1368 and attempted to have King examined. King refused to cooperate with the examiners. Dr. Mattiuzzi examined King's records and was of the opinion that King had an antisocial personality, but did not meet the criteria of section 1368.

King exhibited a lot of animosity towards Aye and made some threats. Aye could not recall if King specifically said he could have Aye killed; that was an ongoing theme King used with lawyers, but Aye "didn't put too much heat in that." Because of King's animosity, however, Aye felt he was losing his objectivity and asked to be relieved. Aye recalled King's preliminary hearing was not held due to King's behavior in the holding cell, but believed the transport officers may have been baiting King. Aye believed King needed to show more self-control.

On cross-examination King asked Aye if the doctor had said anything about his thyroid problem. Aye did not recall anything. King claimed his

behavior problems were due to his thyroid problem, which activated his bipolar manic depression. The court explained that King had been found competent to stand trial and assist in his defense, so his thyroid problem was not relevant at this time.

King's last appointed counsel was Donald Dorfman. Dorfman met with King before a court appearance. King was very unhappy with Dorfman's research on attacking King's priors. King told Dorfman to be very careful when he got upstairs. In court King grabbed Dorfman's sport coat and pulled him towards him. Dorfman gave in so his coat would not be torn. King told Dorfman he would crush his head if Dorfman were to continue. Dorfman was not certain, but he believed King's hands were chained. Dorfman told the court King did not like him. The court asked King what was not to like, and King said, "I hate this sack of shit." King was removed from the courtroom.

Dorfman testified King told him he was considering having someone fly up and take care of Aye. Dorfman had received discovery from the district attorney's office as he was still the attorney of record. King had a series of 115 incident reports while in jail; he had had problems involving snapping his teeth at a doctor and correctional officers that had not been charged. King was not reluctant to act out. Dorfman believed King did present the threat he claimed.

The trial court reviewed King's record and noted that he had been held in contempt and fined $500 during his arraignment. His preliminary hearing had been postponed after King broke his wrist shackles, used a chain as a weapon, and could not be removed from his cell. There was zero evidence of psychosis and King had refused to speak to the mental health staff. Dr. Ebert had found King's thyroid function might be abnormal and there was a strong relationship between abnormal thyroid function and abnormal behavior. Elevations in thyroid were associated with impulsive and aggressive behavior.

The court found King's right to counsel could have been forfeited based solely on the head-butting incident. By his ongoing course of extremely serious misconduct King had forfeited his right to counsel.

A redacted transcript of the hearing was provided to the district attorney. The district attorney moved to amend the complaint to add two counts of making criminal threats, alleging Long and Dorfman as the victims. The court granted this motion and denied King's request for the appointment of counsel on new counts six and seven.

At the preliminary hearing King wanted to waive his appearance. After King told the court, "I won't sit here and be quiet," the court excused him

under Penal Code section 1043.5. Midway through the proceeding, King was brought back in and ordered to stay after he promised not to be disruptive. King asked the court to dismiss counts six and seven because he had no attorney. The motion was denied and King was held to answer on all counts.

King petitioned this court for a writ of mandate or prohibition, which was denied. King then petitioned the California Supreme Court, asserting he was wrongly denied counsel on counts six and seven. The Supreme Court ordered the matter transferred to this court with directions to treat the petition as a petition for a writ of mandate and to issue an alternative writ addressing the issue of whether the trial court erred in finding King had forfeited his right to counsel, as well as the issue King raised in the petition. This court issued an alternative writ and appointed counsel to represent King in the writ proceeding.

Through his newly appointed counsel, King moved to expand the scope of writ review and we granted the motion. In addition to arguing that the trial court erred in finding he forfeited his right to counsel, King raises ineffective assistance of counsel. King contends Dorfman provided ineffective assistance at the forfeiture hearing. First, Dorfman met privately with the judge and asked that King's right to counsel be forfeited. Then, although Dorfman continued to represent King, he failed to object that King had not received notice of the forfeiture proceeding, presented no evidence in King's favor at the hearing, questioned no witnesses, and offered no argument in support of King's right to counsel. Instead, Dorfman offered evidence against King and even volunteered inadmissible hearsay. In short, Dorfman functioned as King's prosecutor.

## DISCUSSION

### I

Both the United States Constitution and the California Constitution provide the right of a criminal defendant to have the assistance of counsel in his defense. (U.S. Const., 6th & 14th Amends.; Cal. Const., art. I, § 15.) The importance of this right can hardly be overstated. "An accused's right to be represented by counsel is a fundamental component of our criminal justice system. Lawyers in criminal cases 'are necessities, not luxuries.' Their presence is essential because they are the means through which the other rights of the person on trial are secured. Without counsel, the right to trial itself would be 'of little avail,' as this Court has recognized repeatedly. 'Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any

other rights he may have.' " (*United States v. Cronic* (1984) 466 U.S. 648, 653 [104 S.Ct. 2039, 2043, 80 L.Ed.2d 657, 664], fns. omitted.) The right to counsel "is one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty. . . . The Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not 'still be done.' " (*Johnson v. Zerbst* (1938) 304 U.S. 458, 462 [58 S.Ct. 1019, 1022, 82 L.Ed. 1461, 1465, 146 A.L.R. 357], fns. omitted.) ▮ The right to counsel is so basic to a fair trial that its denial can never be treated as harmless error. (*Chapman v. California* (1967) 386 U.S. 18, 23, fn. 8 [87 S.Ct. 824, 827-828, 17 L.Ed.2d 705, 710, 24 A.L.R.3d 1065].)

▮ Although the right to counsel is of utmost importance, it is not absolute and a criminal defendant may waive the right. (*Johnson v. Zerbst, supra*, 304 U.S. 458, 463 [58 S.Ct. 1019, 1022, 82 L.Ed. 1461, 1466].) The loss of the right to counsel by means of words or conduct is often referred to as "waiver" of the right. (E.g., *U.S. v. Jennings* (M.D.Pa. 1994) 855 F.Supp. 1427, 1443.) This terminology is not precise; waiver is merely one means by which a forfeiture may occur. (See *Freytag v. Commissioner* (1991) 501 U.S. 868, 894, fn. 2 [111 S.Ct. 2631, 2647, 115 L.Ed.2d 764, 790] (conc. opn. of Scalia, J.) [noting that waiver and forfeiture have so often been used interchangeably that it may be too late for precision].)

In *U.S. v. Goldberg* (3d Cir. 1995) 67 F.3d 1092, 1099-1101, in determining whether a defendant "waived" his right to counsel by deliberate abusive behavior, the court set forth the important distinctions between the concepts of "waiver" and "forfeiture" and the hybrid concept of "waiver by conduct." A waiver is an intentional relinquishment of a known right or privilege. (*Johnson v. Zerbst, supra*, 304 U.S. 458, 464 [58 S.Ct. at p. 1023, 82 L.Ed.2d 1461, 1466].) The waiver of the right to counsel must be knowing, voluntary and intelligent. (*Id.* at pp. 464-465 [58 S.Ct. at p. 1023].) To waive the right to counsel and assert the right of self-representation, a defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' [Citation.]" (*Faretta v. California* (1975) 422 U.S. 806, 835 [95 S.Ct. 2525, 2541, 45 L.Ed.2d 562, 582].) In contrast, "forfeiture results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right." (*U.S. v. Goldberg, supra*, 67 F.3d 1092, 1100.) There is a hybrid situation involving elements of waiver and forfeiture, termed " 'waiver by conduct' " or " 'forfeiture with knowledge.' " (*Id.* at pp. 1100-1101.) Once a defendant has been warned that he will lose his attorney if he engages in dilatory tactics, any misconduct thereafter may be treated as an implied waiver of the right to counsel. (*Id.* at p. 1100.)

█ Although King engaged in an ongoing course of misconduct, the record does not show that he was ever warned that his misconduct could result in loss of his right to counsel. Thus, the loss of his right to counsel can be upheld only under the concept of forfeiture. We must determine whether the right to counsel may be forfeited by misconduct without any prior warning that forfeiture could occur.

Federal courts have held the right to counsel may be forfeited without warning due to serious misconduct. The Attorney General relies on these cases to uphold the finding of forfeiture in this case. In *U.S. v. Jennings, supra,* 855 F.Supp. 1427 the defendant was charged with two counts of assault on a federal officer and possession of a prohibited object (a shank). Prior to jury selection, the defendant moved to substitute counsel. As he proffered no valid reason, the motion was denied. In open court, the defendant hit counsel with his closed fist. The court allowed counsel to withdraw and found the defendant had "waived" his right to counsel. The defendant later made threatening remarks against the prosecutor, corrections officers, and his former counsel. Since the defendant had enormous physical strength, the threats were taken seriously. (*Jennings,* at pp. 1432-1433.) The court found the most appropriate response to the threat of violence in the courtroom is to refuse to allow the manipulation; where the defendant manipulates the right to counsel, he should be deprived of that right. (*Id.* at p. 1444.) "We hold that an indigent defendant who, without provocation or justification, physically assaults court-appointed counsel, thereby waives the right to appointed counsel." (*Id.* at p. 1445.)

In *U.S. v. McLeod* (11th Cir. 1995) 53 F.3d 322, 324-325, the court concluded the defendant forfeited his right to counsel at the hearing on his new trial motion by virtue of his pervasive misconduct towards counsel. After a jury found the defendant guilty of retaliating against a witness, he moved to dismiss his appointed attorney, for appointment of new counsel, and for a new trial. New counsel, who submitted briefs on the new trial motion was appointed. Counsel then moved to withdraw. At the hearing on the motion to withdraw counsel testified the defendant was abusive toward him, threatened to harm him, repeatedly threatened to sue him, and had asked him to engage in unethical conduct. (*Id.* at pp. 323, 325.) Counsel was allowed to withdraw and no new counsel was appointed. The Eleventh Circuit Court of Appeals found no error in the finding of forfeiture of counsel. The court was troubled by the lack of any warning that misconduct might lead to pro se representation, but noted that the defendant was given the opportunity to testify at the hearing on the motion to withdraw, but refused to take an oath. (*Id.* at p. 326.) Further, the court noted the forfeiture only applied to the new trial motion, as to which the papers had already been filed; the defendant was appointed counsel at sentencing and on appeal. (*Id.* at p. 326, fn. 13.)

In *U.S. v. Goldberg, supra,* 67 F.3d 1092, court-appointed counsel moved to withdraw, alleging the defendant had threatened him. Without hearing from the defendant, the trial court granted the motion to withdraw and refused to appoint new counsel, noting the defendant had the financial means to employ counsel. The court denied a continuance to allow the defendant to liquidate assets to pay a retainer, finding the defendant had manipulated the judicial system and waived the right to counsel. (*Id.* at p. 1096.) When counsel appeared in court to turn over his files to the defendant, the court swore in counsel as witness and elicited testimony about the conduct that led to withdrawal. (*Ibid.*) The Third Circuit Court of Appeals reversed the judgment. It found the case should be analyzed as a forfeiture; even if it would accept a forfeiture argument, forfeiture could not be based on an ex parte hearing where the defendant's interests were not represented. (*Id.* at p. 1102.) The court further noted that only the alleged death threat would be sufficiently extremely serious misconduct to warrant forfeiture of the right to counsel. (*Ibid.*)

Forfeiture of the right to counsel was found in *U.S. v. Leggett* (3d Cir. 1998) 162 F.3d 237, after the defendant attacked his attorney in the courtroom at sentencing. The defendant punched the lawyer, knocking him to the ground, and then straddled the lawyer and began to choke, scratch and spit on him. The attorney was allowed to withdraw and the trial court concluded Leggett had forfeited his right to counsel at the sentencing hearing. (*Id.* at p. 240.) The Third Circuit found an unprovoked physical battery on counsel qualifies as the sort of extremely serious misconduct that amounts to a forfeiture of the right to counsel. No evidentiary hearing was required because the misconduct occurred in full view of the court. (*Id.* at p. 250.) Noting the forfeiture of counsel at sentencing did not deal as serious a blow to the defendant as forfeiture at trial, the court expressed no opinion whether the misconduct would have been sufficient to justify the forfeiture of counsel at trial. (*Id.* at p. 251, fn. 14.)

In *Gilchrist v. O'Keefe* (2d Cir. 2001) 260 F.3d 87, the defendant petitioned for a writ of habeas corpus, claiming a New York state court unconstitutionally deprived him of counsel during sentencing by refusing to appoint new counsel after the defendant punched his counsel in the ear, causing that counsel to withdraw. Under the deferential standard of habeas corpus review, the circuit court found the state court did not act in a manner contrary to, or in an unreasonable application of, clearly established law as determined by the Supreme Court. (*Id.* at pp. 89-90.) The court rejected the contention that Supreme Court precedent established that the right to counsel may only be waived, not forfeited. Two Supreme Court cases involving the forfeiture of the right to be present at trial under the confrontation clause,

*Illinois v. Allen* (1970) 397 U.S. 337 [90 S.Ct. 1057, 25 L.Ed.2d 353] and *Taylor v. United States* (1973) 414 U.S. 17 [94 S.Ct. 194, 38 L.Ed.2d 174] (*Taylor*), recognized that constitutional rights may be forfeited even absent a warning. "At a minimum, these cases—in particular, *Taylor*—stand for the proposition that, even absent a warning, a defendant may be found to have forfeited certain trial-related constitutional rights based on certain types of misconduct." (*Gilchrist v. O'Keefe, supra,* 260 F.3d at p. 97.)

Although the Second Circuit Court of Appeals affirmed, it noted that the result might have been different if it had been a direct appeal from a federal conviction. "[W]e might well have agreed with petitioner that the constitutional interests protected by the right to counsel prohibit a finding that a defendant forfeits that right based on a single incident, where there were no warnings that a loss of counsel could result from such misbehavior, where there was no evidence that such action was taken to manipulate the court or delay proceedings, and where it was possible that other measures short of outright denial of counsel could have been taken to protect the safety of counsel." (*Gilchrist v. O'Keefe, supra,* 260 F.3d at p. 89.) The court encouraged trial courts to take intermediate steps short of the complete denial of counsel to protect counsel, such as keeping the defendant in restraints when meeting with counsel and in court. Further, the defendant could be punished for his misconduct by considering the misconduct in imposing sentence or by separately prosecuting the defendant for the misconduct. (*Id.* at p. 100.)

King contends that despite these cases there is no support in United States Supreme Court cases for finding a forfeiture of the right to counsel for misconduct, at least where there is no warning and the forfeiture is considered permanent. He contends *Illinois v. Allen, supra,* 397 U.S. 337 [90 S.Ct. 1057, 25 L.Ed.2d 353], requires both a warning and an opportunity to reclaim the right when a constitutional right is lost due to misconduct. The issue in *Allen* was "whether an accused can claim the benefit of this constitutional right to remain in the courtroom while at the same time he engages in speech and conduct which is so noisy, disorderly, and disruptive that it is exceedingly difficult or wholly impossible to carry on the trial." (397 U.S. at p. 338 [90 S.Ct. at p. 1058].) The Supreme Court rejected the view that the Sixth Amendment right to be present at one's trial was so absolute that a defendant could not lose the right so long as he insisted upon it, no matter how unruly or disruptive his behavior. ▮ "Although mindful that courts must indulge every reasonable presumption against the loss of constitutional rights, [citation], we explicitly hold today that a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly,

disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom. Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings." (397 U.S. at p. 343 [90 S.Ct. at pp. 1060-1061], fn. omitted.)

In *Taylor, supra,* 414 U.S. 17 [94 S.Ct. 194, 38 L.Ed.2d 174], the defendant failed to return for the afternoon session of trial. The trial continued and the defendant was found guilty. On appeal he contended his voluntary absence could not be construed as an effective waiver of the right to be present absent a showing that he knew or had been warned he had a right to be present and the trial would continue in his absence. (414 U.S. at p. 19 [94 S.Ct. at pp. 195-196].) The Supreme Court rejected the contention. "It is wholly incredible to suggest that petitioner, who was at liberty on bail, had attended the opening session of his trial, and had a duty to be present at the trial, [citation], entertained any doubts about his right to be present at every stage of his trial. It seems equally incredible to us, as it did to the Court of Appeals, 'that a defendant who flees from a courtroom in the midst of a trial—where judge, jury, witnesses and lawyers are present and ready to continue—would not know that as a consequence the trial could continue in his absence.' [Citation.]" (414 U.S. at p. 20 [94 S.Ct. at p. 196].)

King argues *Taylor, supra,* 414 U.S. 17 [94 S.Ct. 194, 38 L.Ed.2d 174], is not a case of forfeiture by misconduct; rather, it is an example of waiver of a constitutional right by the failure to assert it. " 'No procedural principle is more familiar to this Court than that a constitutional right,' or a right of any other sort, 'may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.' [Citation.]" (*United States v. Olano* (1993) 507 U.S. 725, 731 [113 S.Ct. 1770, 1776, 123 L.Ed.2d 508, 517].)

The court in *Taylor, supra,* 414 U.S. 17 [94 S.Ct. 194, 38 L.Ed.2d 174], was concerned not only that the defendant failed to assert his right to be present, but that his conduct was an attempt to delay the proceedings. The court quoted from Justice Brennan's concurring opinion in *Illinois v. Allen, supra,* 397 U.S. 337, 349 [90 S.Ct. 1057, 1063-1064, 25 L.Ed.2d 353, 362], "there can be no doubt whatever that the governmental prerogative to proceed with a trial may not be defeated by conduct of the accused that prevents the trial from going forward." Justice Brennan believed a disruptive defendant should not be allowed to profit from his wrong and constitutional rights can be surrendered if abused for the purpose of frustrating trial. (*Illinois v. Allen, supra,* 397 U.S. 337, 350 [90 S.Ct. 1057, 1064] (conc. opn.

of Brennan, J.).) "The Constitution would protect none of us if it prevented the courts from acting to preserve the very processes that the Constitution itself prescribes." (*Ibid.*)

We read *Taylor, supra,* 414 U.S. 17 [94 S.Ct. 194, 38 L.Ed.2d 174], together with *Allen* as the *Gilchrist* court did, to permit loss of a constitutional right in certain circumstances based on misconduct, even without a prior warning. (*Gilchrist v. O'Keefe, supra,* 260 F.3d 87, 97.) "The right to assistance of counsel, cherished and fundamental though it be, may not be put to service as a means of delaying or trifling with the court." (*United States v. Fowler* (5th Cir. 1979) 605 F.2d 181, 183.) Courts cannot tolerate misconduct by a defendant that seeks to delay or disrupt judicial proceedings. Even less tolerable is such conduct which additionally endangers the safety of defense counsel or others. When a criminal defendant engages in the most serious misconduct towards counsel, it is simply "incredible" that the defendant would not realize his right to counsel may be lost.

While a defendant's misconduct towards counsel cannot be tolerated, forfeiture of counsel is rarely the most appropriate response. We agree with the *Gilchrist* court that trial courts should take intermediate steps to protect counsel before a complete denial of the right to counsel. (*Gilchrist v. O'Keefe, supra,* 260 F.3d at p. 100.) Where it is necessary to impose physical restraints on a defendant, the least obtrusive and restrictive restraint that provides effective security should be selected. (*People v. Mar* (2002) 28 Cal.4th 1201, 1226 [124 Cal.Rptr.2d 161, 52 P.3d 95]; Pen. Code, § 688.) We believe the same principle of applying the least burdensome measure that will provide the necessary security should be applied when a defendant's fundamental right to counsel is at stake. In many instances a trial court will find it preferable to respond to the defendant's misconduct by removing the defendant, with counsel remaining, rather than removing the attorney and leaving the misbehaving defendant present. A violent, threatening and disruptive defendant is hardly the ideal candidate for pro se representation. (See *Faretta v. California, supra,* 422 U.S. at p. 834, fn. 46 [95 S.Ct. at p. 2541, 45 L.Ed.2d at p. 581] [trial court may terminate self-representation by a defendant who engages in serious and obstructionist misconduct].)

"[T]rial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case." (*Illinois v. Allen, supra,* 397 U.S. 337, 343 [90 S.Ct. 1057, 1061, 25 L.Ed.2d 353, 359].) Similar discretion must be granted to trial courts where defendant's misconduct is directed at counsel. A defendant who physically assaults counsel can—and should—be physically restrained in future meetings with counsel to prevent further assaults. (Cf. *People v.*

*Duran* (1976) 16 Cal.3d 282, 290-291 [127 Cal.Rptr. 618, 545 P.2d 1322, 90 A.L.R.3d 1] [physical restraint of defendant in courtroom in presence of jury permissible on showing of manifest need for restraint].) If necessary, additional measures can be taken to protect counsel, such as noncontact meetings between the defendant and counsel. Further, the misconduct may be considered an aggravating factor at sentencing or may be the basis of an additional criminal prosecution. (*Gilchrist v. O'Keefe, supra,* 260 F.3d at p. 100.)

We recognize the utmost importance of the right to counsel and its role in assuring a fair trial and believe that most instances of misconduct by a defendant can be dealt with by measures less severe than forfeiture of counsel. Where a defendant engages in a course of misconduct towards counsel that is unprovoked and intended to cause counsel to withdraw and to delay or disrupt proceedings, and it reasonably appears that measures to curtail the misconduct are inadequate or futile, the right to counsel may be forfeited. Yet only in those rare cases of extremely serious misconduct towards counsel where it is apparent that any lesser measures will be patently inadequate to protect counsel may the right to counsel be forfeited in the first instance.

While a warning is not always required before forfeiture of counsel can occur, in instances where the misconduct does not rise to the most serious level, a warning should be given. The warning will serve to alert the defendant to the seriousness of his misconduct and perhaps forestall future misconduct. In this case, King should have been both restrained and warned after he attacked Comiskey. In *State v. Cummings* (1996) 199 Wis.2d 721, 757 [546 N.W.2d 406, 419-420], the Wisconsin Supreme Court held a trial court has the ability to find that a manipulative or disruptive defendant has forfeited his right to counsel. The court recommended, however, that in the future courts follow four steps outlined in the dissent before determining a defendant had forfeited his right to counsel. (*Id.* at p. 756, fn. 18 [546 N.W.2d at p. 420].) The dissent recommended (1) explicit warnings that if the defendant persists in his misconduct he will forfeit the right to counsel and have to proceed pro se; (2) a colloquy in which the defendant is made aware of the dangers of self-representation; (3) a clear ruling of forfeiture; and (4) factual findings to support the ruling. (*Id.* at p. 764 [546 N.W.2d at p. 423] (dis. opn. of Geske, J.).) In addition to measures to control a defendant, we also recommend these steps before a trial court declares a forfeiture of counsel.

Another state court has found that serious misconduct may support a finding of forfeiture of counsel in *State v. Carruthers* (Tenn. 2000) 35 S.W.3d 516. *Carruthers* was a death penalty case, in which several attorneys

moved to withdraw. The defendant's final lead counsel moved to withdraw due to the defendant's threats, which were severe enough to cause his secretary nightmares. The trial court recognized the pattern as a ploy to delay trial and denied the motion. (*Id.* at pp. 538-539.) Counsel renewed his motion, now fearing for his daughter's safety. That motion was denied by the trial court and the defendant was cautioned. (*Id.* at p. 539.) Counsel filed an appeal and the court of criminal appeals ruled he should be allowed to withdraw. The trial court ruled the defendant had to proceed pro se, with his other counsel as "elbow counsel." The court denied the defendant's requests for appointment of new counsel. (*Id.* at pp. 542-543.) Elbow counsel was allowed to withdraw due to the defendant's personal, verbal attacks. The defendant represented himself at trial and sentencing, and was convicted and sentenced to death. Counsel was appointed to represent him on his motion for new trial and on appeal. (*Id.* at p. 545.)

On appeal Carruthers argued he did not waive counsel, any implicit waiver was invalid because he was not advised of the possibility of waiver and the dangers of self-representation, and his conduct was not so egregious as to justify a finding of forfeiture. (*State v. Carruthers, supra,* 35 S.W.3d at p. 546.) After reviewing case law on forfeiture of counsel, the Tennessee Supreme Court concluded that even assuming the warnings were insufficient for an implicit waiver, Carruthers's conduct was sufficiently egregious to support a finding that he forfeited his right to counsel. "We reiterate that a finding of forfeiture is appropriate only where a defendant egregiously manipulates the constitutional right to counsel so as to delay, disrupt, or prevent the orderly administration of justice. Where the record demonstrates such egregious manipulation a finding of forfeiture should be made and such a finding will be sustained, even if the defendant is charged with a capital offense." (*Id.* at p. 550.)

We emphasize that only the most serious misconduct, or repeated misconduct after measures to control defendant have failed, will suffice to support a finding of forfeiture. That requirement distinguishes this case from *State v. Boykin* (1996) 324 S.C. 552 [478 S.E.2d 689]. In *Boykin,* the court of appeals found it unnecessary to determine whether forfeiture of the right to counsel should be recognized in South Carolina because it found a single incident in which defendant cussed at and came after counsel was not sufficient to constitute forfeiture. (*Id.* at p. 558 [478 S.E.2d at p. 692].)

II

King contends the procedure by which forfeiture of the right to counsel was found denied him due process. He contends he was entitled to

notice of the forfeiture hearing, counsel to represent him at the hearing, and the opportunity to present evidence. None of the forfeiture cases cited above addressed the due process prerequisites for a forfeiture of the right to counsel. In *U.S. v. Goldberg, supra*, 67 F.3d 1092, 1102, the court found a forfeiture could not be based on an ex parte hearing where the defendant's interests were not represented. In *Gilchrist v. O'Keefe, supra*, 260 F.3d at page 98, footnote 6, the court noted the issue of whether the defendant had a right to counsel at the forfeiture hearing was not raised. Given the paucity of authority in this area, we requested supplemental briefing on the due process requirements for finding a forfeiture of counsel, particularly whether there is a right to counsel at the forfeiture hearing.

The Attorney General contends that where a defendant's egregious conduct causes the forfeiture of counsel, he is entitled only to a hearing and no prior notice of the hearing. He does not have a right to counsel at the hearing, or at most, counsel's role is limited to research and written advocacy. In contrast, King contends a defendant facing forfeiture of counsel is entitled to a full array of due process procedures, including the right to counsel.

■ In identifying the specific dictates of due process, we consider three distinct factors: "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [Citation.]" (*Mathews v. Eldridge* (1976) 424 U.S. 319, 335 [96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33].)

■ Consideration of these factors indicates a proceeding for forfeiture of counsel calls for considerable procedural protections. The private interest affected by a forfeiture of counsel is loss of a fundamental constitutional right, as well as possible future criminal charges. There is some risk of an erroneous deprivation where the forfeiture is to be based on conflicting testimony about conduct that occurred outside the presence of the court. While the government has an interest in judicial efficiency and protecting attorneys, it also has an interest to ensure a fair trial and the right to counsel is a means of protecting that right. Further, the burden on the government of procedural requirements is small, as the forfeiture proceeding is rare, reserved for only the most serious cases.

"The essential elements of due process accorded in a hearing traditionally consist of the right to produce evidence and cross-examine adverse witnesses

[citation], the right to appear by counsel [citation], and the right to an impartial decision maker [citation]." (*People v. Smithson* (2000) 79 Cal.App.4th 480, 496 [94 Cal.Rptr.2d 170].) A defendant facing forfeiture of counsel is entitled to these essential elements of due process. In addition, the assistance of counsel is required by the Sixth Amendment as applied to the states through the due process clause of the Fourteenth Amendment. "[A]ppointment of counsel for an indigent is required at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected." (*Mempa v. Rhay* (1967) 389 U.S. 128, 134 [88 S.Ct. 254, 257, 19 L.Ed.2d 336, 340].) A hearing to determine whether a defendant forfeits his fundamental constitutional right to counsel affects the substantial rights of the defendant and requires the assistance of counsel. Where necessary to protect counsel, a trial court may impose restrictions, such as restraint of the defendant or no physical contact between the defendant and counsel.

Due process also requires notice so that a defendant may enjoy the right to a hearing. (*Fuentes v. Shevin* (1972) 407 U.S. 67, 80 [92 S.Ct. 1983, 1994, 32 L.Ed.2d 556, 569].) A defendant may be present at the hearing, as "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." (*Kentucky v. Stincer* (1987) 482 U.S. 730, 745 [107 S.Ct. 2658, 2667, 96 L.Ed.2d 631, 647].) The right to be present, of course, is subject to forfeiture if the defendant conducts himself in a disruptive manner. (*Illinois v. Allen, supra*, 397 U.S. 337, 343 [90 S.Ct. 1057, 1060-1061, 25 L.Ed.2d 353, 359].)

At this forfeiture hearing, before King's first attorney, Comiskey, testified, he asked that the prosecutor not be present as attorney-client confidences could be involved. The trial court removed the prosecutor. Removing the prosecutor was proper. In a hearing pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44], to determine whether to substitute counsel, "the better practice is to exclude the district attorney when a timely request is made to do so by the defendant or his counsel. In the absence of a request, the trial court should exclude the district attorney whenever information would be presented during the hearing to which the district attorney is not entitled, or which could conceivably lighten the prosecution's burden of proving its case. [Citation.]" (*People v. Madrid* (1985) 168 Cal.App.3d 14, 19 [213 Cal.Rptr. 813].) In a forfeiture hearing the trial court should be guided by the same principles in determining whether to remove the prosecutor.

The trial court released a redacted transcript of the hearing to the prosecutor, which was the basis of additional charges. While King does not at

this time challenge that action directly, in response to our request for additional briefing on the due process requirements for a forfeiture hearing, he asserts that evidence adduced at the hearing should not be available to the prosecution to use against him in a criminal proceeding. He analogizes the situation to a competency examination, in which there is judicially declared immunity. (*Tarantino v. Superior Court* (1975) 48 Cal.App.3d 465, 469 [122 Cal.Rptr. 61].) We find the analogy inapt. In the competency examination the defendant is compelled to submit to a psychiatrist's questioning in the absence of his attorney. That is not the procedure at a forfeiture hearing.

King contends he should have immunity for his testimony at the hearing as he should not be forced to give up his Fifth Amendment right not to incriminate himself in order to effectively assert his constitutional right to counsel. King offers no compelling reason for a blanket grant of immunity for evidence, including his testimony, adduced at a forfeiture hearing. In *Simmons v. United States* (1968) 390 U.S. 377, 394 [88 S.Ct. 967, 19 L.Ed.2d 1247, 1259], the Supreme Court held "that when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection." To establish standing to bring a suppression motion, the defendant testified he owned a suitcase. Money wrappers from a bank robbery were found in the suitcase and the defendant's testimony about ownership of the suitcase was used to convict him of robbery. The court found it "intolerable that one constitutional right should have to be surrendered in order to assert another." (*Ibid.*) King contends he is faced with the same "intolerable" choice in deciding whether to testify to retain his right to counsel. The *Simmons* rule, however, has been held not to apply to incriminating testimony about crimes other than those charged in the instant proceeding. (*U.S. v. Bryser* (2d Cir. 1996) 95 F.3d 182, 186.) A defendant should not be able to immunize other criminal conduct by testifying about it. (*U.S. v. Baker* (D.Or. 1987) 655 F.Supp. 1040, 1043, affd. (9th Cir. 1988) 850 F.2d 1365.) Generally, a forfeiture hearing will involve misconduct other than that charged. Where defendant's testimony relates to charged offenses the trial court should determine if the rationale of *Simmons* requires that testimony be kept from the prosecutor.

In order to permit meaningful appellate review of forfeiture of counsel, a trial court must set forth on the record its factual findings that support a forfeiture of the right to counsel. (Cf. *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 531 [53 Cal.Rptr.2d 789, 917 P.2d 628] [requiring reasons for dismissal of strike prior be set forth in a minute order].) When a defendant waives his right to counsel, we require an unequivocal request for self-representation. (*People v. Marshall* (1997) 15

Cal.4th 1, 23 [61 Cal.Rptr.2d 84, 931 P.2d 262].) The finding of forfeiture of the right to counsel should be equally unequivocal. The trial court should find the facts supporting forfeiture by clear and convincing evidence.

In conclusion, since the fundamental constitutional right to counsel is at issue, a proceeding to find forfeiture of that right requires procedural due process protections. Before a finding of forfeiture is made, the court must conduct a hearing and give the defendant notice of the hearing. At the hearing the defendant is entitled to be present, to have the assistance of counsel, to present evidence, and to cross-examine witnesses. The court must find the facts supporting forfeiture by clear and convincing evidence, and set forth its factual findings in the record.

## III

We have determined that forfeiture of the right to counsel may be appropriate in cases where despite the trial court's efforts to control the defendant through lesser measures, including warnings and physical restraints, he engages in a course of misconduct that causes counsel to withdraw and makes appointment of new counsel futile, provided procedural due process protections are afforded defendant at the forfeiture hearing. We now consider whether forfeiture of counsel was appropriate in this case. Although King's misconduct was both serious and ongoing, we find forfeiture of the right to counsel was not appropriate as the hearing did not comply with the requirements of due process and the right to counsel at all critical stages of the proceeding. While the hearing was deficient in several respects, of greatest concern is the absence of effective assistance of counsel. While King nominally had counsel at the hearing, counsel not only failed to represent King's interests, but actively argued against him and in favor of forfeiture.

"Representation of a criminal defendant entails certain basic duties. Counsel's function is to assist the defendant, and hence counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest. [Citation.] From counsel's function as assistant to the defendant derive the overarching duty to advocate the defendant's cause and the more particular duties to consult with defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution. Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process. [Citation.]" (*Strickland v. Washington* (1984) 466 U.S. 668, 688 [104 S.Ct. 2052, 2065, 80 L.Ed.2d 674, 694].)

A defense counsel who represents a defendant who is violent and threatening towards counsel is placed in a difficult position. Certainly

counsel may move to withdraw and advise the trial court of the reasons for withdrawal. The trial court may then determine a hearing on forfeiture of counsel is appropriate and require counsel to testify. But while counsel remains the defendant's attorney, he owes the defendant a duty of loyalty. "Attorneys have a duty to maintain undivided loyalty to their clients to avoid undermining public confidence in the legal profession and the judicial process. [Citation.]" (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1146 [86 Cal.Rptr.2d 816, 980 P.2d 371].)

At the forfeiture hearing King was entitled to an attorney with "the overarching duty to advocate the defendant's cause." (*Strickland v. Washington, supra*, 466 U.S. at p. 688 [104 S.Ct. at p. 2065].) Dorfman offered no argument in favor of King retaining his right to counsel, not even an argument that the forfeiture proceeding violated King's due process rights. Instead, Dorfman violated the duty of loyalty by offering evidence of King's other violent behavior, evidence Dorfman obtained in his position as King's attorney. Dorfman concluded by arguing against his client: "So I really do believe that he probably does present the threat he says he does."[1] Since Dorfman completely denied King effective assistance of counsel, it was as though King had no counsel at the forfeiture hearing. The denial of the assistance of counsel at a critical stage of the proceeding is reversible per se. (*United States v. Cronic, supra*, 466 U.S. at p. 659, fn. 25 [104 S.Ct. at p. 2047, 80 L.Ed.2d at p. 668].) Accordingly, the finding of forfeiture of counsel must be reversed.

## DISPOSITION

Let a peremptory writ of mandate issue directing the superior court to vacate its order of January 12, 2000, finding King had forfeited his right to counsel and all subsequent orders and to appoint counsel for King. The cause is remanded for further proceedings consistent with this opinion.

Callahan, J., and Kolkey, J., concurred.

A petition for a rehearing was denied May 5, 2003, and petitioner's petition for review by the Supreme Court was denied June 25, 2003. George, C. J., did not participate therein.

---

[1] At the preliminary hearing, under cross-examination by King, Dorfman testified: "I asked the Court to relieve me and to make sure that you didn't get any other attorneys because I thought you were dangerous."