57 Cal.Rptr.3d 126 (2007)
149 Cal.App.4th 243
In re Edward B. PRESCOTT.
No. D047936.
Court of Appeal of California, Fourth District, Division One.
April 3, 2007.
*128 Edward B. Prescott, in pro. per., and Harry Zimmerman, under appointment by the Court of Appeal, for Petitioner.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, and David Delgado-Rucci, Deputy Attorney General, for Respondent.
*127 AARON, J.

I.

INTRODUCTION
Defendant Edward Prescott, by petition for writ of habeas corpus, challenges his criminal conviction on one count of corporal injury to a spouse, on the ground that he was denied his Sixth Amendment right to the assistance of counsel during a critical stage of his criminal proceedings. Prescott contends that his right to the assistance of counsel was violated when, after Prescott indicated a desire to withdraw his guilty plea, his court-appointed counsel provided a report to the trial court in which he concluded that there existed no basis for Prescott to file a motion to withdraw the guilty plea, and revealed privileged communications between himself and Prescott.
We conclude that counsel violated Prescott's attorney-client privilege by revealing to the court and prosecutor the content of *129 his conversations with Prescott. We further conclude that Prescott was effectively deprived of the assistance of counsel when his appointed counsel not only failed to advocate on Prescott's behalf, but advocated against Prescott's interests. Such complete deprivation of counsel is one of the rare circumstances in which prejudice to the defendant is presumed, and reversal is required.

II.

FACTUAL AND PROCEDURAL BACKGROUND
Prescott was charged with residential burglary (Pen.Code, §§ 459, 460), inflicting corporal injury on his spouse (Pen.Code, § 273.5, subd (a)), and battery (Pen.Code, § 242). The information alleged that Prescott had previously been denied probation on five occasions (Pen.Code, § 203, subd. (e)(4)), and had served two prior prison terms (Pen.Code, § 667.5, subd. (b)).
On June 30, 2004, Prescott entered a guilty plea to the charge of corporal injury to a spouse, in exchange for the dismissal of the remaining charges and allegations. Prescott was to receive a stipulated sentence of two years in prison.
Shortly after he entered his guilty plea, Prescott called his attorney and indicated that he wanted to withdraw his plea. Because Prescott's trial attorney believed there was a conflict since she was "the one that did the plea" at a hearing on the matter, the trial court appointed another attorney, Robert James, to "represent Mr. Prescott and investigate whether or not there is a legal basis to withdraw his plea."
On August 13, 2004, after having investigated the matter and having interviewed his client, James reported to the court his conclusion that there was no basis for a motion to withdraw the plea. James provided written copies of his report to the trial court, the prosecutor, and another unspecified individual.[1] In that report, James stated,
"I have reviewed Mr. Prescott's contentions. I believe that his mental abilities were unimpaired by the medication he received. I believe that he was not coerced into accepting the plea bargain. Rather, he knowingly accepted the offered plea bargain because he believed it was in his best interest to do so. I believe that there is no basis for a motion to withdraw his plea. I hereby decline to file such a motion."
After James offered his conclusions, the court granted Prescott's request to proceed in propria persona with regard to the motion, and relieved James as attorney of record. Prescott subsequently filed in pro per a motion to withdraw his guilty plea. During the hearing on his motion, Prescott testified that he had been confused at the time he entered the guilty plea, and that he had needed more time to talk with his attorney. He testified that he entered the guilty plea because he was afraid he might receive a long sentence if he did not plead guilty. Prescott also said that he had taken the drug Vicodin during the 24-hour period before he entered the plea. He stated that his trial counsel had rushed him into entering a guilty plea, and that he was confused and did not have enough time to consider the charges. According to Prescott, he was hysterical at the time he entered the guilty plea. He said he had *130 to be taken to the hospital after the entered his plea because he passed out.
The court denied Prescott's motion and sentenced Prescott to prison for the stipulated two-year middle term. The court denied Prescott's request for a certificate of probable cause.
Prescott nevertheless pursued an appeal. This court affirmed the judgment of the trial court on the basis that without a certificate of probable cause, a defendant cannot challenge the merits of a guilty plea on appeal. (People v. Prescott, 2005 WL 3473326 (Dec. 19, 2005, D045540) [nonpub. opn.].)[2] However, we also voiced concern regarding "the trial court's practice of appointing counsel to represent a defendant who expresses a desire to withdraw a guilty plea, and then permitting the appointed counsel to violate the attorneyclient privilege and provide the court with a report as if the appointed attorney were not the representative of a defendant but a referee." (People v. Prescott, supra, D045540 at p. 3.)
Prescott filed a petition for writ of habeas corpus on January 30, 2006, and filed a supplemental petition for writ of habeas corpus on May 5, 2006. This court requested that the People file a response to the supplemental petition, which the People did by letter brief dated June 7, 2006. Prescott filed a reply by letter brief dated June 22, 2006.

III.

DISCUSSION

A. The attorney-client privilege

Prescott contends that Attorney James disclosed confidential, privileged communications between the two of them in the report James filed with the court. Evidence Code section 952 defines confidential communications between clients and attorneys as including "information transmitted between a client and his or her lawyer in the course of that relationship and in confidence...." The client is the holder of the privilege, and may refuse to disclose, or prevent another from disclosing, confidential communications between the client and his or her lawyer. (Evid.Code, §§ 953, 954.)
In his written report to the court, Attorney James revealed a number of things Prescott had told him during the course of their interview, including Prescott's feelings regarding the circumstances under which he entered his guilty plea and the time pressure he felt. James provided a detailed summary in which he paraphrased a number of statements Prescott made during their discussions.
The People do not dispute Prescott's contention that James disclosed privileged communications.[3] Instead, the *131 privilege by failing to "object to James providing copies of communications he and Prescott had to the court and the prosecution at the time that James informed the trial court he would not be filing a motion to withdraw the guilty plea." In making this assertion, the People rely on Evidence Code section 912, subdivision (a), which provides in part, "Consent to disclosure is manifested by any statement or other conduct of the holder of the privilege indicating consent to the disclosure, including failure to claim the privilege in any proceeding in which the holder has the legal standing and opportunity to claim the privilege." Considering the peculiar nature of these proceedings, we find the People's argument meritless.
"[A] waiver is the intentional relinquishment of a known right." (BP Alaska Exploration, Inc. v. Superior Court (1988) 199 Cal.App.3d 1240, 1252, 245 Cal.Rptr. 682.) There is nothing to suggest that Prescott intentionally gave up his right to keep his discussions with counsel private. Based on this record, one cannot reasonably conclude that Prescott knew he could have objected to the disclosure of privileged communications, and despite this knowledge, chose not to do so. There is no reason to expect that Prescott, a criminal defendant whose appointed attorney was the one intentionally violating Prescott's attorney-client privilege, would have any idea that he had the right to object to his attorney's conduct, much less that he would be penalized for failing to do so. Prescott's counsel should have been assisting him in protecting his privileged communications. Prescott was denied the assistance of counsel in making an objection to the revelation of his privileged communications because it was his own attorney who was revealing them. Because it was Prescott's own counsel who intentionally violated Prescott's attorney-client privilege, thereby leaving Prescott without the assistance of counsel, we conclude that Prescott's failure to object to his attorney's revelation of privileged communications does not amount to a waiver of that privilege.

B. By acting as an advocate for the court rather than for his client, Prescott's appointed counsel provided ineffective assistance to a degree that amounts to a deprivation of counsel

1. Attorney James's representation fell below an objective standard of reasonableness

Prescott contends that he was deprived of his right to the effective assistance of counsel when James filed a report with the court in which he disclosed confidential attorney-client communications and set forth his reasons for concluding that there was no basis for Prescott to file a motion to withdraw his guilty plea.
Both the United States Constitution and the California Constitution provide that a criminal defendant has the right to the assistance of counsel in his defense. (King v. Superior Court (2003) 107 Cal.App.4th 929, 937, 132 Cal.Rptr.2d 585 (King), citing U.S. Const., 6th & 14th Amends.; Cal. Const., art. I, § 15.) "`An accused's right to be represented by counsel is a fundamental component of our criminal justice system. Lawyers in criminal cases "are necessities, not luxuries." Their presence is essential because they are the means through which the other rights of the person on trial are secured. Without counsel, the right to trial itself would be "of little avail," as this Court has recognized repeatedly. "Of all the rights that *132 an accused person has, the right to De represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have.'" [Citation.]" (King, supra, 107 Cal.App.4th at pp. 937-938, 132 Cal.Rptr.2d 585, fns. omitted.)
"The right to counsel `is one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty.... The Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not "still be done.'" [Citation.]" (King, supra, 107 Cal.App.4th at p. 937, 132 Cal.Rptr.2d 585, citing Johnson v. Zerbst (1938) 304 U.S. 458, 462, 58 S.Ct. 1019, 82 L.Ed. 1461.)
"The special value of the right to the assistance of counsel explains why `[it] has long been recognized that the right to counsel is the right to the effective assistance of counsel.' [Citation.]" (United States v. Cronic (1984) 466 U.S. 648, 654, 104 S.Ct. 2039, 80 L.Ed.2d 657 (Cronic).) A defendant has the right to the effective assistance of counsel at all critical stages of the criminal proceeding, and that portion of the proceeding during which a defendant attempts to withdraw a previously entered plea is a critical stage. (See People v. Brown (1986) 179 Cal.App.3d 207, 214, 224 Cal.Rptr. 476 (Brown) [defendant's constitutional right to the assistance of counsel extends to the making of a motion to withdraw a guilty plea].)
In order to establish that he has been denied the effective assistance of counsel, a defendant must show that his attorney's representation fell below an objective standard of reasonableness and that any deficiencies in the attorneys performance were prejudicial to him. (Strickland v. Washington (1984) 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674.) We first consider the reasonableness of Attorney James's representation of Prescott.
"Representation of a criminal defendant entails certain basic duties. Counsel's function is to assist the defendant, and hence counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest. [Citation.]" (Strickland, supra, 466 U.S. at p. 688, 104 S.Ct. 2052.)[4] "From counsel's function as assistant to the defendant derive the overarching duty to advocate the defendant's cause and the more particular duties to consult with defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution. Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process. [Citation.]" (Ibid., italics added.) "Thus, the adversarial process protected by the Sixth Amendment requires that the accused have `counsel acting in the role of an advocate.' [Citation.]" (Cronic, supra, 466 U.S. at p. 656,104 S.Ct. 2039.)
When Prescott sought to file a motion to withdraw his guilty plea, he was entitled to the assistance of an attorney who recognized and carried out the duty to advocate his cause. (Cf. King, supra, 107 Cal.App.4th at p. 950, 132 Cal.Rptr.2d 585 [defendant entitled to attorney with duty to advocate his cause at hearing regarding defendant's forfeiture of right to assistance of counsel].) Prescott had decided that he wanted to move to withdraw his guilty plea, a decision that was his to make. (Brown, supra, 179 Cal.App.3d at p. 215, *133 224 Cal.Rptr. 476)[5] Once a defendant determines that he wishes to withdraw his guilty plea, defense counsel has a duty to present a motion to withdraw, unless the motion "in counsel's good faith opinion, is frivolous or when to do so would compromise accepted ethical standards." (Id. at p. 216, 224 Cal.Rptr. 476.)[6]
Brown does not provide guidance as to how a defense attorney who holds a good faith opinion that a motion to withdraw would be frivolous or would compromise the attorney's ethical standards should conduct himself or herself. Nevertheless, under no circumstances is it appropriate to reveal a client's confidential communications and/or advocate in direct contravention of the client's wishes. A simple statement indicating that counsel has a good faith basis for refusing to file a motion to withdraw a plea would be sufficient to protect counsel's interests in such a circumstance. However, that is not what occurred here. Rather, Attorney James filed a two and a half page report in which he revealed confidential communications between himself and Prescott, and presented all of the reasons supporting his conclusion that Prescott had no basis for filing a motion to withdraw his guilty plea. Attorney James further violated the duty of loyalty by offering evidence contradicting his client's claims about his use of medication prior to entering the plea evidence James was able to obtain only because of his role as Prescott's attorney.[7] James concluded his report by stating that he did not believe any of his client's contentions, and that he did not believe there was any basis for a motion to withdraw the plea, thus clearly advocating against his client's cause. This conduct clearly fell below an objective standard of reasonableness.

2. Attorney James's conduct was prejudicial to Prescott

Under Strickland, in order to make out a claim of ineffective assistance of counsel, a defendant must establish not only that counsel's performance fell below an objective standard of reasonableness, but also that any deficiencies in the attorney's *134 performance were prejudicial to him. (Strickland, supra, 466 U.S. at p. 688, 104 S.Ct. 2052.) In a small subset of cases, however, reversal is required because the circumstances surrounding the representation were "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." (Cronic, supra, 466 U.S. at p. 658, 104 S.Ct. 2039.) Those circumstances in which prejudice should be presumed include situations where there was a complete denial of counsel, where counsel entirely failed to subject the prosecution's case to meaningful adversarial testing, or in situations where despite the fact that counsel is available to assist the accused during trial, the likelihood that any lawyer could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial. (Id at pp. 658-659, 104 S.Ct. 2039.) The presumption of prejudice is thus generally reserved for situations in which counsel has wholly failed to function as the client's advocate. (Florida v. Nixon (2004) 543 U.S. 175, 189, 125 S.Ct. 551, 160 L.Ed.2d 565.)
We conclude that the circumstances in this case warrant reversal under the holding in Cronic, supra, 466 U.S. at page 659, 104 S.Ct. 2039. Not only did Attorney James fail to function as Prescott's advocate during Prescott's attempt to withdraw his guilty plea, but James actively advocated against Prescott's wishes and interests, refuting one by one Prescott's contentions as to why he should be allowed to withdraw his guilty plea. This "representation" was worse than having no counsel at all. (See King, supra, 107 Cal.App.4th at p. 949, 132 Cal.Rptr.2d 585.) The complete denial of counsel during a critical stage in the proceedings necessitates automatic reversal. (Cronic, supra, 466 U.S. at p. 659, 104 S.Ct. 2039.)
In response to reason's arguments, me People assert that James's conduct in this situation is akin to the conduct of the attorney whose actions were challenged in Bell v. Cone (2002) 535 U.S. 685, 695, 122 S.Ct. 1843, 152 L.Ed.2d 914 (Bell). In Bell, defense counsel failed to offer mitigating evidence during a capital sentencing hearing. Instead, counsel referred the jury to the mitigating evidence they had heard during the guilt phase of the trial. (Id at p. 697,122 S.Ct. 1843.) The United States Supreme Court concluded that the attorney's conduct in that situation did not give rise to per se prejudice as outlined in Cronic, supra, 466 U.S. at page 658, 104 S.Ct. 2039, because the attorney's failure to test the prosecutor's case was not a "complete" failure. (Bell, supra, 535 U.S. at pp. 696-697, 122 S.Ct. 1843.) The People suggest that if the United States Supreme Court did not see fit to apply a standard of per se prejudice to an attorney's "failure to present [any] mitigating evidence at all in a death penalty case," there is no reason to apply a per se prejudice standard here, where the mistake made by counsel, as described by the People, was "ma[king] no argument for the motion to withdraw Prescott's guilty plea, and informing] the court he had no basis to do so."
The People's description of James's error fails to accurately portray the nature of the challenged conduct. As we have already discussed, Attorney James did more than simply fail to make an argument in support of the motion to withdraw Prescott's guilty plea. James actively argued against allowing Prescott to file the motion to withdraw his plea, and violated Prescott's attorney-client privilege in the process. There is no failure of representation more complete than an attorney advocating against his client.
*135 The People also suggest that Prescott was not harmed by James's report, since the trial court did "not simply impose judgment" upon receiving the report, but, rather, allowed Prescott to make the motion to withdraw his guilty plea on his own. "The trial court stated in great detail why it was denying the motion, none of which was based on what James had told the court." However, the two main arguments Prescott relied on in support of his motion to withdraw the guilty plea involved topics James covered in his report. Prescott argued that his trial attorney had not adequately advised him regarding the plea offer and its consequences, and that he was unable to properly grasp the consequences of pleading guilty as a result of having taken Vicodin prior to accepting the plea offer. James's report comments on both of these topics, and concludes that neither provides a basis to withdraw the plea. Thus, although the court did not resort to citing James's report or its specifics, there is no way of knowing the extent to which the report might have influenced the trial court in its consideration of Prescott's pro per motion to withdraw his guilty plea.
Further, contrary to the People's argument, it is not enough that the trial court allowed Prescott to represent himself in filing and arguing the motion to withdraw his plea. Prescott clearly wanted to be represented by counsel during these proceedings. He specifically requested that the court appoint an attorney to represent him in a motion to withdraw his guilty plea. He did not seek to represent himself in the motion until after James failed to advocate on his behalf. Prescott was denied the effective assistance of counsel in a manner so antithetical to our adversary system that we must presume he was prejudiced:
"`The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free.' [Citation.] It is that `very premise' that underlies and gives meaning to the Sixth Amendment. It `is meant to assure fairness in the adversary criminal process.' [Citation.] Unless the accused receives the effective assistance of counsel, `a serious risk of injustice infects the trial itself.' [Citation.]" (Cronic, supra, 466 U.S. at pp. 655-656, 104 S.Ct. 2039, fns. omitted.)
The trial court created this unfortunate situation by appointing James as Prescott's counsel for the purpose of determining whether there was any ground for bringing a motion to withdraw Prescott's guilty plea. Appointing an attorney ostensibly to act as counsel for the defendant, but whose directive from the court is to determine whether there exists a basis for a motion to withdraw a guilty plea, sets up an inappropriate dynamic by which the court in effect asks defense counsel to act in the court's interest, not the interest of the client. The role the court asked defense counsel to play in this situationa neutral "referee" of sortsinherently conflicts with defense counsel's primary duty to advocate on the client's behalf.
Equally troubling is James's decision to step into the role the court requested of him. Obviously, an attorney need not file a motion he or she believes is frivolous or that would compromise the attorney's ethical standards. However, if James did not believe there was a basis for a motion to withdraw Prescott's guilty plea, he could have simply declined to file a motion, and informed the court that in his opinion, doing so would be frivolous. James could have done this without violating the attorney-client *136 privilege or advocating a position contrary to his client's interests.

IV.

DISPOSITION
The judgment is vacated and the matter is remanded to the trial court. In the interest of justice, the matter shall be reassigned to a different judge. The trial court is directed to strike from the record the document entitled "Report of Attorney" filed on August 4, 2004.
Prescott may file a new motion to withdraw his guilty plea. Any new motion shall be filed within 60 days of the issuance of the remittitur. If Prescott requests additional time to file a motion to withdraw his plea, the court may grant the request for good cause, at its discretion.
If Prescott wishes to be represented by an attorney to assist him in assessing his options and making a decision as to whether to file a new motion to withdraw his guilty plea and/or in preparing a new motion to withdraw his guilty plea, the trial court shall appoint new counsel to represent Prescott.[8]
If Prescott indicates that he does not wish to file a motion to withdraw his guilty plea, or does not file a motion to withdraw his guilty plea or seek additional time to file a motion to withdraw his guilty plea within 60 days of the issuance of the remittitur, the trial court shall reinstate the original judgment.
This opinion is final as to this court five days after it is filed. (See Cal. Rules of Court, rule 8.264(b)(3).)
WE CONCUR: McCONNELL, P.J., and NARES, J.
NOTES
[1] At the hearing, James stated, "I have provided the court with a report, and I have given a copy to the prosecutor and to Mr. Prescott and to Mr. Dennis Kerr." It is unclear from the record who Mr. Kerr is, or what his involvement is in the case.
[2] We cite to the unpublished opinion of this court pursuant to California Rules of Court, rule 8.1115(b) (formerly rule 977(b)), which allows citation to an unpublished opinion when the opinion is "relevant under the doctrines of law of the case, res judicata, or collateral estoppel...."
[3] There can be no dispute that an attorney owes his client a duty to protect the confidentiality of their discussions. "Protecting the confidentiality of communications between attorney and client is fundamental to our legal system. The attorney-client privilege is a hallmark of our jurisprudence that furthers the public policy of ensuring `"the right of every person to freely and fully confer and confide in one having knowledge of the law, and skilled in its practice, in order that the former may have adequate advice and a proper defense." [Citation.]' [Citation.]" (People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc. (1999) 20 Cal.4th 1135, 1146, 86 Cal.Rptr.2d 816, 980 P.2d 371 (SpeeDee Oil Change).) "To this end, a basic obligation of every attorney is `[t]o maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client.' [Citation.]" (Ibid.)
[4] "Attorneys have a duty to maintain undivided loyalty to their clients to avoid undermining public confidence in the legal profession and the judicial process. [Citation.]" (SpeeDee Oil Change, supra, 20 Cal.4th at p. 1146, 86 Cal.Rptr.2d 816, 980 P.2d 371.)
[5] "Although, as previously stated, an attorney representing a criminal defendant has the power to control the court proceedings [citations], that power may not be exercised to deprive a defendant of certain fundamental rights. [Citations.] [f] We view the decision to seek withdrawal of a plea of guilty, just as the decision to enter such plea, as one which the defendant is entitled to make. [Citations.] The defendant's attorney may, and when appropriate, should advise against the decision, but the defendant should have the final word on whether to seek withdrawal." (Brown, supra, 179 Cal.App.3d at p. 215, 224 Cal.Rptr. 476.)
[6] Recognizing the "resultant intrusion on counsel's judgment in requiring [counsel] to yield to [a] defendant's decision" (Brown, supra, 179 Cal.App.3d at p. 215, 224 Cal.Rptr. 476), the Brown court referred to the Supreme Court's comments in People v. Frierson (1985) 39 Cal.3d 803, 816-817, 218 Cal.Rptr. 73, 705 P.2d 396: "`Such impingement on defense counsel's actions, however, results any time a defendant chooses to exercise a personal right-such as the right to testify or the right to trial by jury-over counsel's contrary advice. Numerous decisions explain that, in such a situation, the attorney's obligation is simply to provide the best representation that he can under the circumstances. [Citations.] Further, the authorities also establish that when a defendant insists on a course of action despite his counsel's contrary warning and advice, he may not later complain that his counsel provided ineffective assistance by complying with his wishes. [Citations.]' " (Brown, supra, 179 Cal.App.3d at p. 215, 224 Cal.Rptr. 476.)
[7] Prescott signed a medical release form that allowed James to obtain Prescott's medical records. Prescott subsequently questioned the veracity of James's summary of Prescott's medical records.
[8] We recognize that Prescott has already served his two-year sentence and that he is currently on parole. Thus, if Prescott files a new motion to withdraw his" guilty plea and the court grants the motion, Prescott would be facing a trial and the potential for additional prison time if found guilty. If Prescott determines that he longer wishes to pursue a motion to withdraw his guilty plea, he is not obligated to do so.