[No. F011277. Fifth Dist. Mar. 7, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
MARCIANO BARRAZA TORRES, Defendant and Appellant.

[No. F012217. Fifth Dist. Mar. 7, 1990.]

In re MARCIANO BARRAZA TORRES on Habeas Corpus.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for partial publication. The portions directed to be published follow.

COUNSEL

Fern M. Laethem, State Public Defender, under appointment by the Court of Appeal, and George L. Mertens, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Jane N. Kirkland and Janine R. Busch, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

THAXTER, J.—

### INTRODUCTION

Marciano Barraza Torres was convicted after jury trial of offering to sell a large amount of cocaine to an undercover officer. (Health & Saf. Code, §§

11352, 11351, 11370.4, subd. (a)(1); Pen. Code, § 1203.073.) He contends his conviction must be reversed because: (1) he was denied private visits with his attorney and was unable to prepare for trial, and (2) as a result, he received ineffective assistance of counsel. In the published portion of the opinion we hold that jail officials denied appellant his right to consult privately with counsel by having him speak with his attorney while observed by jail guards. In the unpublished portion of the opinion we affirm the conviction because appellant did not make the showing of prejudice necessary to compel reversal.

## STATEMENT OF FACTS

On August 1, 1988, a reliable confidential jailhouse informant reported that appellant planned to escape from the Madera County jail with the help of his attorney (Counsel). The escape was to be effectuated by the use of an automatic weapon. Jail authorities ordered a number of heightened security measures for appellant including limiting his visits with Counsel to a public visiting room.

On August 4, 1988, Counsel visited appellant in jail to have him sign some real estate papers. Counsel was accompanied by his legal secretary who was to notarize appellant's signature. Counsel was told he could see appellant only after he and his secretary submitted to a metal detector and a patdown search. He was also told he could only see appellant in the public visiting room just off the jail lobby. The public visiting room is 12 feet long and divided by a glass partition. Six chairs and telephones are on each side of the partition.

Counsel and appellant sat in the second chairs directly in front of the visiting room door even though the other seats were available. Counsel, the secretary and appellant testified that several guards stood on each side of the partition, both inside and outside the visiting room doors, about three feet from appellant and Counsel.

Sergeant Blazer was in charge of the lobby and visiting room when Counsel arrived. He ordered two or three officers to bring appellant to the visiting room and stand outside the room. He instructed Officer Balbas to man the station in the lobby outside the visiting room. Officer Waller escorted appellant to the room and left the area. Officer Balbas stayed at the station which is about four feet from the visiting room. She did not enter the visiting room. The 30- to 45-minute interview between appellant and Counsel took place during a shift change so a number of officers walked through the lobby during that time. Also during that time, Lieutenant Keel, the operations commander, was in the lobby area conversing with Sergeant

Blazer. He did not enter the visiting room during Counsel's meeting with appellant. He saw the officers on appellant's side of the room standing in the hallway about four feet from appellant. That hallway has a high noise level. The officers were instructed to remain out of earshot. None of the officers heard any of appellant's conversation. Neither appellant nor Counsel asked that the visiting room doors be closed. Counsel thought the doors had to remain open and that he would be able to see appellant in a private room after his secretary left. After the papers were signed, Counsel asked to see appellant in a private room. His request was denied.

Counsel returned to the Madera jail on Saturday morning, August 6, 1988, and asked to see appellant. He was told he could only see him in the public visiting room, and that room would not be empty for three hours. Counsel left without seeing appellant. Counsel was told the restricted visits were initiated because appellant's bail ($1 million) was so high; he was not told the real reason for the precautions. Appellant did not want to discuss his case over the jailhouse phones because he thought others listened in, so Counsel did not meet privately with him again until Friday, September 23, when they met for two hours at the courthouse. Trial commenced on Monday, September 26, 1988.

## STATEMENT OF THE CASE

At a bail hearing before trial, Counsel made an oral motion for an order permitting private visits. However, Counsel did not provide the court with any substantial information about the restricted visits and the court denied the motion. After trial, appellant brought a petition for writ of habeas corpus on the grounds that he had been denied private visits with Counsel. After a contested hearing, the court denied the petition and found: appellant had the opportunity to communicate with Counsel in absolute privacy; appellant and Counsel met on numerous occasions prior to August 4; the actions the jail took on August 4 were reasonable and visits were restricted for legitimate reasons; the public visiting room offered the opportunity for private communication and the doors to the room could have been closed and other persons excluded; appellant had the opportunity to meet with Counsel for two hours a few days before trial; and appellant's and Counsel's unwillingness to communicate by phone in the public visiting room was a result of "possible paranoia." Thus, appellant was not denied his right to communicate with Counsel in absolute privacy.

DISCUSSION

*The Right to Private Consultation With Counsel.*

1. *The restrictions placed on visits with counsel infringed appellant's right to consult privately with counsel.*

Appellant contends the restrictions placed on his visits with Counsel amounted to a denial of his right to the assistance of counsel. Because of the restrictions, he was unable to communicate with Counsel and prepare for trial. The Attorney General submits the noncontact visits were a reasonable security measure and, in fact, appellant and Counsel met a sufficient length of time to prepare for trial.

■ Whether appellant's claim is reviewed on appeal or habeas corpus, the substantial evidence standard of review applies. This court must review the whole record in the light most favorable to the judgment or order below, and conflicts in the evidence must be resolved in favor of the People. (*People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255]; *In re Garcia* (1977) 67 Cal.App.3d 60, 65 [136 Cal.Rptr. 461]; *In re Higgins* (1962) 199 Cal.App.2d 1, 10 [18 Cal.Rptr. 316].)

■ An essential element of the right to counsel is the opportunity for the defendant to consult with his counsel in absolute privacy. (*Barber* v. *Municipal Court* (1979) 24 Cal.3d 742, 751 [157 Cal.Rptr. 658, 598 P.2d 818].) Adequate legal representation requires a full disclosure of the facts to counsel. Privacy is necessary to ensure that the defendant may safely reveal all the facts of his case to his attorney. Thus, an inmate must be afforded a reasonable opportunity to privately consult with his attorney without having other persons present. (*In re Qualls* (1943) 58 Cal.App.2d 330, 331 [136 P.2d 341].)

In *In re Snyder* (1923) 62 Cal.App. 697 [217 P. 777], the court found an inmate was unable to privately consult with his attorney where he was forced to confer with her in a large room across a table separated by a wire screen. Eight persons could be seated on either side of the table and there was nothing to prevent a person from seeing or hearing anything that another person did or said. The court ordered the jailer, upon request of the accused or his counsel, to permit the accused to consult with his attorney in a place and under circumstances which would afford reasonable opportunity for "absolute privacy of consultation." (*Id.* at pp. 699, 702.) In *In re Poe* (1966) 65 Cal.2d 25, 32, footnote 5 [51 Cal.Rptr. 896, 415 P.2d 784], the court expressly disapproved the practice of officers being present during

attorney-client conferences, even if the officers are not listening to the conversation.

■  Jail authorities can, however, impose reasonable restrictions on visits between an inmate and his attorney if necessary for institutional security.

In *Department of Corrections* v. *Superior Court* (1982) 131 Cal.App.3d 245 [182 Cal.Rptr. 294], inmate Jordan, who was charged with attempted murder and aggravated assault by a life prisoner, had a history of violence and weapons possession in prison. Prison officials forbad Jordan to have "contact" visits with his counsel when they found a note taped to Jordan's legal papers which read, "Otto-Frei, 13th and Webster, ask for jeweler's wire." (*Id.* at pp. 250-251.) Jordan had to meet with counsel in a "noncontact" room similar to the public visiting room at the Madera jail. In the noncontact room the attorney and client were separated by a partition and communicated by telephone. Only the attorney and client were present in the room during consultations. Apparently prison staff could look into the room through a small window, but there was no constant surveillance. (*Id.* at pp. 248-249.) Upon Jordan's motion, the trial court reinstated contact visits under the authority of *Adams* v. *Carlson* (7th Cir. 1973) 488 F.2d 619. *Adams* held noncontact visits constituted an unwarranted interference with an inmate's right to counsel absent a reasonable suspicion that the attorney would smuggle contraband. (*Department of Corrections* v. *Superior Court, supra,* 131 Cal.App.3d at p. 249.) The appellate court reversed.

The court noted that although federal cases such as *Adams* v. *Carlson, supra,* 488 F.2d 619 and *Keker* v. *Procunier* (E.D.Cal. 1975) 398 F.Supp. 756, were entitled to great deference, they were not binding on California courts nor persuasive under the distinguishable circumstances of Jordan's case. (*Department of Corrections* v. *Superior Court, supra,* 131 Cal.App.3d at pp. 252-253.) *Adams* involved a blanket denial of contact visits to all inmates in segregated confinement following disturbances at the prison and the discovery of gunpowder in an inmate's cell. Unlike Jordan's case, there was no evidence of any particular inmate's history of weapons possession or violence. (*Id.* at p. 253.)

*Department of Corrections, supra,* 131 Cal.App.3d 245, also noted the United States Supreme Court had consistently upheld restrictions on prisoners' rights based on policy considerations of institutional security and internal order. (*Id.* at p. 253.) In *Block* v. *Rutherford* (1984) 468 U.S. 576, 589 [82 L.Ed.2d 438, 448-449, 104 S.Ct. 3227], the court held that a blanket prohibition on contact visits between jailed pretrial detainees and their friends and family is a reasonable, nonpunitive response to legitimate security concerns. And in *Bell* v. *Wolfish* (1979) 441 U.S. 520 [60 L.Ed.2d 447, 99 S.Ct. 1861], the Supreme Court considered the constitutional rights of pre-

trial detainees and observed: " 'Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.' [Citations.] The fact of confinement as well as the legitimate goals and policies of the penal institution limits these retained constitutional rights. [Citation.] There must be a 'mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application.' [Citation.] . . . [¶] . . . Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape or unauthorized entry. Accordingly, we have held that even when an institutional restriction infringes a specific constitutional guarantee, . . . the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security. [Citations.] [¶] Finally, . . . the problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. [Citations.] 'Such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.' [Citation.]" (*Bell* v. *Wolfish, supra,* 441 U.S. at pp. 545-548 [60 L.Ed.2d at pp. 473-474].)

In California, the review of security measures affecting inmates' rights requires consideration of Penal Code section 2600. In relevant part, that statute provides that a person confined in state prison may "be deprived of such rights, and only such rights, as is necessary in order to provide for the reasonable security of the institution . . . and for the reasonable protection of the public." ■ The California Supreme Court has held that the statute protects not only state prisoners but also those merely detained pending trial, and is binding on county jail authorities. (*De Lancie* v. *Superior Court* (1982) 31 Cal.3d 865, 872 [183 Cal.Rptr. 866, 647 P.2d 142].) In addition, that court has interpreted the "necessary" standard of Penal Code section 2600 as requiring "that a security measure be the least intrusive possible of inmates' rights yet flexible enough to satisfy the security need." (*In re Arias* (1986) 42 Cal.3d 667, 691 [230 Cal.Rptr. 505, 725 P.2d 664].)

■ When the jail authorities received information from a reliable source that appellant was planning an escape, that Counsel was instrumental in the plan, and that a weapon might be used, security requirements clearly justified some restrictions on Counsel's visits with appellant. Whether or not all the restrictions were necessary, however, presents a more difficult question.

Subjecting Counsel and his secretary to a previsit search and restricting the visit to the noncontact public visiting room appear to be necessary responses to the security threat. The authorities, though, went further. They posted guards within three or four feet of appellant and Counsel, near open doors. Common experience tells us that officers within such close proximity would appear to be able to overhear any conversation between appellant and Counsel and would have a chilling effect on attorney-client communications. Such a setting can hardly be described as "private."

The trial court found that appellant and Counsel had the opportunity to consult in absolute privacy because the doors could have been closed. That finding, in itself, suggests a security measure less intrusive of appellant's rights than that employed. The uncontradicted evidence is that the doors remained open throughout the entire meeting. Respondent argues that because appellant and Counsel never requested the doors be closed, appellant cannot now complain. We reject that position because it would require appellant to request or suggest the conditions under which his constitutional right to private consultations with his attorney could be exercised. (Cf. *State* v. *Beaupre* (1983) 123 N.H. 155 [459 A.2d 233, 236].) The jail authorities, having control of the setting and having a duty to provide an opportunity for appellant to consult *privately* with his attorney, should have at least told appellant and Counsel that the doors would be closed if they wished. No such advice was given.

The trial court never found that the security measures taken were necessary, only that they were reasonable. If the court had found that posting guards within three or four feet of appellant and Counsel, near open doors, was necessary, the finding would not have been supported by substantial evidence. Accordingly, we hold that the jail authorities denied appellant the right to privately consult with Counsel.

.        .        .        .        .        .        .        .        .        .        .        .        .        .        .        .        .        .        .        .*

The judgment therefore is affirmed and the petition for writ of habeas corpus is denied.

Best, Acting P. J., and Stone (W. A.), J., concurred.

A petition for a rehearing was denied April 5, 1990, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied June 7, 1990.

---

* See footnote, *ante,* page 700.