Filed 4/23/15; pub. order 5/14/15 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| COUNTY OF NEVADA et al., | |
| Petitioners, | C074504 |
| v. | (Super. Ct. Nos. F1100317, F12000376, F12000450, F12000504B, F13000059, F13000175, M12001105, M12001123, M12001618B, M12001672A, M12001776, M130093) |
| THE SUPERIOR COURT OF NEVADA COUNTY, | |
| Respondent; | |
| JACOB MICHAEL SIEGFRIED et al., | |
| Real Parties in Interest. | |

The commander at the Wayne Brown Correctional Facility in Nevada County (the jail) gave notice in early 2013 that lawyers would generally no longer be able to meet face-to-face with their incarcerated clients in visiting rooms without glass partitions, but instead would generally be required to meet with their clients in glass-partitioned rooms. The jail commander cited safety and security concerns. Several inmates, real parties in interest, moved for the restoration of what they characterized as "contact visits,"

1

face-to-face visits in non-partitioned rooms.  The trial court consolidated the motions and held an evidentiary hearing, ultimately ordering that confidential attorney-client contact visits (which the trial court defined as visits in a meeting space without physical barriers between attorney and client) be made available at the jail absent circumstances justifying suspension of such visits in individual cases.

The County of Nevada (the county) filed a petition for a writ of mandate or prohibition in this court.  We issued a stay and an order to show cause, and subsequently reviewed the briefs and evidence submitted by the county and real parties in interest, along with the amicus curiae briefs submitted by the California State Sheriffs' Association, the California Police Chiefs Association, the California Peace Officers' Association, California Attorneys for Criminal Justice, and the National Association of Criminal Defense Lawyers.

We conclude the trial court did not abuse its discretion in ordering that confidential attorney-client contact visits be made available at the jail absent circumstances justifying suspension of such visits in individual cases.  We will deny the writ petition and lift the stay.

## BACKGROUND

For many years, attorneys representing individuals incarcerated at the jail routinely had face-to-face visits with their clients in non-partitioned rooms at the jail. At the evidentiary hearing in this case, a former jail commander said that during his tenure he allowed attorneys to have such visits unless their clients were particularly violent or posed a threat.

2

In January 2013, however, the jail commander issued the following notice:

"Effective February 4, 2013, the Wayne Brown Correctional Facility will have attorney/client visitation take place in the attorney visitation [partitioned] rooms. This change is being done for the safety and security of the facility, attorneys, and your clients as well as due to increased jail population and staffing issues. Should you require paperwork to be delivered to your client, we will be happy to accommodate you and open the pass through slot in the visitation room. [¶] Any requests for 'Professional Contact Visits' need to be approved by the On Duty Supervisor and are limited to the attorney of record."

The jail commander explained the change by noting that the jail's population had recently increased and that jail staffing had been reduced. He acknowledged that 50 to 60 new inmates were being housed at the jail pursuant to a contract with the federal government and that the federal government paid the county for their housing.

Following the notice, nearly all meetings between inmates and lawyers took place in partitioned rooms. The rooms are divided by a barrier consisting of the following: glass from the ceiling to about three feet from the floor; a locked metal pass-through slot; and a wall from the bottom of the slot to the floor. The pass-through slot is less than an inch high (similar to a residential mail slot) that can be unlocked by jail staff if a request is made by an attorney. There is a wall-mounted telephone on each side of the barrier. The telephone is not connected to outside telephone lines; it is "basically a wire connecting the two boxes together." There is evidence that it is necessary to speak loudly when using the telephone system. Attorneys and clients communicate with each other

3

either by using the telephone system or by speaking loudly enough to be heard through the pass-through slot. The partitioned rooms have a round metal stool on each side of the partition and a shelf for lawyers, but no tables. An attorney testified that she never uses the telephone in the partitioned rooms because she has to shout anyway and it is hard to take notes, show documents to her client, read the file and also hold the telephone in her hand. Attorneys declared that their communications with clients and their preparation for trial have been adversely affected by the restrictions on contact with their incarcerated clients.

The partitions are sound-proofed on the attorney side. The jail commander testified that he tested the rooms and determined that voices at normal conversation levels on the attorney side of the wall could not be understood outside the visitation room. But evidence was presented that the partitions on the inmate side have not been sound proofed. The wall is cinder block on the inmate side. The jail commander testified that the inmate side of the partitioned rooms do not have sound deadening material because in his experience, the material would likely be removed or vandalized by the inmates. Notwithstanding the efforts to soundproof, there is evidence that an attorney has been able to hear portions of conversations in an adjacent partitioned room.

The only room regularly available to lawyers for non-partitioned visits is a holding cell at the courthouse, but use of that holding cell requires transporting the incarcerated client from the jail to the courthouse, and the holding cell's configuration and limited availability makes it difficult to use.

A psychologist testified about the negative impact on relationships when there are restrictions on communication, comprehension and confidentiality. In addition, a criminal defense attorney with 35 years experience testified that he practiced in many jurisdictions and more than 90 percent of his visits to other jails included non-partitioned visits. There was further testimony that non-partitioned jailhouse visits with counsel are routinely available in other counties and in other states. There was no evidence to the contrary.

The county asserted at the evidentiary hearing that the jail was merely enforcing existing policy. No written policy was produced, however, and a retired jail commander said he was unaware of any such policy. Under the new policy, ministers and teachers continued to be allowed non-partitioned time with inmates in a multi-purpose room along the same hallway, but jail personnel refused requests for non-partitioned visits with defense lawyers in all cases except those requiring the joint review of recordings or voluminous documents. During the first three months after the notice, special permission was given for non-partitioned visits on about 12 occasions, or approximately once per week. In each case an attorney needed to review a video or audio recording, or a large number of documents, with an inmate.

The superior court recognized that prison and jail authorities are given deference in developing policies to preserve internal order. But the superior court noted that prison policies may not unnecessarily abridge a defendant's meaningful access to his attorney and the courts. The superior court ordered confidential attorney-client contact visits, stating, "It is not this court's intention to direct the sheriff's office on how to

5

accommodate attorney-client contact visitation.  The sheriff's office and the county jail staff in particular have a long history of cooperating with the court and other county departments.  They are in the best position to determine whether to revert to the previous means of providing contact visitation or modify existing facilities and/or procedures to accommodate attorney-client contact visits."

We granted the county's petition to stay the superior court order and we ordered the parties to show cause why it should not be vacated.  The county and the real parties in interest briefed the legal issues and submitted the records we requested.  We also received and considered briefing from amici curiae on both sides of the issue.

Amici curiae who support the county's petition assert that if we uphold the superior court's order, sheriffs throughout the state will have to elevate arrangements for non-partitioned visits to the same "must be done" level as providing for inmate food, medical care, exercise and transportation to and from courts.  They contend that any interest inmates may have had to barrier-free visits, like the general right of intimate association, is "superseded by the fact of confinement" and is simply "inconsistent with incarceration."[1]  Amici criminal defense lawyers counter that most county jails provide facilities for non-partitioned attorney visits and that full-contact visits enhance trial preparation and allow "greater compliance with the Constitutional command of effective representation."

---

[1] The quoted terms are from *Gerber v. Hickman* (9th Cir. 2002) 291 F.3d 617, 621, which, in turn, quoted a Missouri case for the proposition that marital relationships are necessarily altered by incarceration.

Additional facts are included in the discussion *post*.

DISCUSSION

The county contends the superior court abused its discretion in ordering contact visits between attorneys and incarcerated clients at the jail. As we will explain, jail inmates have a constitutional right to (A) confidentially confer with counsel, and (B) have contact visits with counsel as part of their right to meaningful access to the courts. The county's generalized concern in this case that safety will be improved if inmates are separated from their lawyers by partitions is not sufficient to meet the county's burden. Substantial evidence supports the superior court's determination that the county's restriction is an exaggerated response to the county's safety concerns. The superior court did not abuse its discretion.

A

The right to effective assistance of counsel includes the right to confer in absolute privacy. (*Small v. Superior Court* (2000) 79 Cal.App.4th 1000, 1010.) California's constitutional protection of the right to counsel has been recognized as the source of a prisoner's right to consult privately with counsel in preparation for trial since at least 1920. (*In re Rider* (1920) 50 Cal.App. 797, 799.) The right to counsel under both state and federal constitutions guarantees a person accused of a crime not just the opportunity to hear his lawyer's advice but also to privately confide facts that may incriminate or embarrass him. (*Barber v. Municipal Court* (1979) 24 Cal.3d 742, 751.) When others can overhear attorney-client communications, there is an impermissible chilling effect on the constitutional right to counsel. (*People v. Torres* (1990) 218 Cal.App.3d 700, 708.)

7

The county acknowledges the right to confidentiality and privacy, but argues the partitioned rooms do not violate that right. The county points to the sound-proofing on the attorney's side of the room and notes that the telephone handsets are not monitored by jail authorities. The jail commander said he ordered sound-proofing on the attorney side of the partition to keep a "normal conversation" from carrying into the adjoining room. Other witnesses testified, however, that attorneys and clients could not hear each other using a "normal" level of conversation; they had to speak loudly, and inmate voices carried through the cinder block walls to the adjacent rooms and hallway. There is substantial evidence that the partitioned rooms, as currently configured, limit or prevent an inmate from privately confiding facts that may incriminate or embarrass the inmate and create an impermissible chilling effect on the constitutional right to counsel.

B

Penal institutions also have an obligation under the 14th Amendment to assure all prisoners meaningful access to the courts. (*Bounds v. Smith* (1977) 430 U.S. 817, 818, 824 [52 L.Ed.2d 72, 76, 80-81].) Meaningful access to the courts includes the right to contact visits with counsel. (*Ching v. Lewis* (9th Cir. 1990) 895 F.2d 608, 610 (*Ching*).)

Institutions may consider economic factors in choosing how to provide access to counsel and the courts, but the cost of protecting constitutional rights cannot justify a blanket denial of the right. (*Bounds v. Smith, supra,* 430 U.S. at p. 825 [52 L.Ed.2d at p. 81].) And, despite great deference to the security judgment of those who operate penal institutions, "the courts cannot abdicate their responsibility to protect inmates' rights to adequate contact with their attorneys and to disapprove of visitation requirements that

8

place a chilling effect on attorney visitation, especially when the security risk in a given case is ephemeral." (*In re Roark* (1996) 48 Cal.App.4th 1946, 1956-1957.) Policies and practices that unjustifiably obstruct the right to assistance of counsel are invalid. (*Procunier v. Martinez* (1974) 416 U.S. 396, 419 [40 L.Ed.2d 224, 243], overruled in part by *Thornburgh v. Abbott* (1989) 490 U.S. 401, 413 [104 L.Ed.2d 459, 473].) Unjustified restrictions on contact visits implicate due process and are a proper subject of concern for the courts.

As the county points out, however, there is no constitutional right to "unrestricted contact visits with counsel." (*Mann v. Reynolds* (10th Cir. 1995) 46 F.3d 1055, 1060 [the Sixth Amendment "does not require in all instances full and unfettered contact between an inmate and counsel"]; *Small v. Superior Court, supra,* 79 Cal.App.4th at p. 1013 [there is no "absolute right" to contact visits].) The Sixth Amendment does not guarantee an absolute right to a "meaningful relationship" between an accused and his counsel (*Morris v. Slappy* (1983) 461 U.S. 1, 14 [75 L.Ed.2d 610, 621]), and physical touch between a lawyer and an inmate is not guaranteed. (See *King v. Superior Court* (2003) 107 Cal.App.4th 929, 943-944 [limiting contact visits for inmate who had physically attacked his lawyer and noting that, in extreme cases, the right to counsel may even be forfeited entirely].) Contact visits may be restricted if there is a legitimate penal justification. (*Ching, supra,* 895 F.2d at p. 610; *Lopez v. Brewer* (9th Cir. 2012) 680 F.3d 1068, 1081; *Barnett v. Centoni* (9th Cir. 1994) 31 F.3d 813, 816.)

In determining whether jail restrictions on attorney contact visits are reasonable, the relevant factors include (1) whether there is a valid, rational connection between

9

the jail restriction and the legitimate governmental interest put forward to justify it;
(2) whether there are alternative means of exercising the right; (3) how the
accommodation of the asserted right will impact guards, other inmates and the allocation
of jail resources; and (4) whether the restriction is an exaggerated response to jail
concerns. (See *Small v. Superior Court, supra,* 79 Cal.App.4th at p. 1011, citing *Turner
v. Safley* (1987) 482 U.S. 78, 89-90 [96 L.Ed.2d 64, 79-80] (*Turner*).)[2]

---

[2] The superior court applied the test described in *In re Arias* (1986) 42 Cal.3d 667, but
*Arias* was abrogated in 1994 by an amendment to Penal Code section 2600 designed to
conform California law to the decision in *Turner*. (*Thompson v. Department of
Corrections* (2001) 25 Cal.4th 117, 130.) Before 1994, Penal Code section 2600
provided that a prisoner could be deprived only of those rights " 'necessary in order to
provide for the reasonable security of the institution in which he is confined and for the
reasonable protection of the public' " but, in consideration of *Turner,* the legislature
amended the statute to allow deprivation of rights " 'reasonably related to legitimate
penological interests.' " (*Ibid.*, italics omitted [quoting Pen. Code § 2600].) Penal Code
section 2600 is binding on jails as well as prisons. (*In re Grimes* (1989) 208 Cal.App.3d
1175, 1181.)

Under *Arias*, courts evaluated the extent to which a deprivation of inmate rights
was necessary to satisfy reasonable security interests, but under *Turner*, courts uphold a
prison regulation if it is reasonably related to legitimate penological interests. (*Thompson
v. Department of Corrections*, *supra*, 25 Cal.4th at pp. 129 -131.) The difference in these
standards is significant; by way of example, monitoring and recording of unprivileged
communications between inmates and their visitors was prohibited under *Arias* but
permitted under *Turner*. (*People v. Loyd* (2002) 27 Cal.4th 997, 1010.) Both before and
after *Turner*, however, California courts have upheld reasonable regulations restricting
attorney contact visits. (See, e.g., *King v. Superior Court, supra,* 107 Cal.App.4th
at p. 943 [inmate hit and threatened his attorneys], *Small v. Superior Court, supra,*
79 Cal.App.4th at p. 1012 [inmate repeatedly hid contraband, manufactured weapons and
assaulted other inmates]; *People v. Torres* (1990) 218 Cal.App.3d 700, 703 [inmate
planned escape with help of his lawyer] and *Dept. of Corrections v. Superior Court*
(1982) 131 Cal.App.3d 245, 248 [inmate repeatedly obtained contraband and assaulted
others in prison].)

Addressing the first factor -- whether there is a valid, rational connection between the jail restriction and the legitimate governmental interest put forward to justify it -- the jail commander's notice cited "the safety and security of the facility, attorneys, and [inmates] as well as . . . increased jail population and staffing issues." The jail commander explained that he intended to enforce existing policy, but no written policy was produced. The jail had allowed non-partitioned visits between inmates and their lawyers in the jail for some 20 years before the change was announced. There was apparently an assault on an attorney by a psychotic inmate at the jail in 2005, but that incident was not offered as justification for the 2013 rule change.

The change in lawyer contact visitation was based in part on a concern that inmates who should be kept apart could be traversing the hallway at the same time. Hallway traffic is monitored by a central command post but rooms where attorney contact visits took place were not controlled by central command. The jail commander also said he wanted to limit the number of people who could access the secure portion of the facility. He explained that professionals (lawyers and psychologists) had always been given keys to access the non-partitioned visitation rooms, raising a concern that an inmate who had contact with an attorney could obtain a key, leave without permission and attack a correctional officer or another inmate. He said there were alarms but no cameras in the non-partitioned rooms.

The jail commander said community members, teachers and religious leaders routinely conduct classes and meetings in partition-free rooms in the jail but, although those community members were "about the same" security risk as lawyers, they were

11

allowed physical contact with inmates because they had been trained regarding jail security, their meeting rooms were monitored by camera, and the door locks were controlled by the jail's central command.

On balance, we conclude that, as to the first factor, jail authorities have identified a legitimate concern for safety and security in the jail. There is a rational connection between that concern and the jail restrictions. The concern identified by jail authorities is primarily based on a lack of monitoring and control. But as we explain in discussing the fourth factor, there is evidence that reasonable measures are available to address the concern.

Turning to the second factor -- whether there are alternative means of exercising the right -- substantial evidence shows that at least one alternative is available. Contact visits are available at the courthouse, although the evidence indicates this alternative is not optimal.

Regarding the third factor -- how the accommodation of the asserted right will impact guards, other inmates and the allocation of prison resources -- the county contends the new restriction results in substantial savings and reduces the risk of inmate violence. Amici curiae operating other jails insist that if counties have to move attorney contact visits to their "must do" list, the courts will "usurp the authority of the Sheriff to determine how best to provide for the safety and security of a jail" and cause a diminution of other programs, procedures and benefits.

There are certainly institutional costs associated with jail visitation, but jails must have written policies and procedures to allow "as many [inmate] visits and visitors as

12

facility schedules, space, and number of personnel will allow." (15 Cal. Code Regs. § 1062.) The evidence indicates that non-partitioned attorney visits are common in most institutions, both in this state and elsewhere. There is no evidence that the costs of non-partitioned attorney visits at the jail had been or would be extraordinary, and in any event, the superior court ordered that the sheriff could choose the time, place and manner of non-partitioned contact visits and prohibit them entirely where warranted. We conclude this factor favors contact visits.

As for the fourth factor -- whether the restriction is an exaggerated response to county concerns -- we have already noted that non-partitioned visits had been allowed for some 20 years before the change, and although there was an assault in 2005, that incident was not cited as a reason for the change. There is also evidence that additional locks, cameras and training could address the county's security concerns. The county's expert agreed that, although it is impossible to eliminate all security risks, such measures would help. The record shows that with existing locks, cameras and training, the jail allows ministers and teachers to meet with inmates in a non-partitioned room. This evidence indicates that the jail restriction is an exaggerated response to the county's legitimate security concern. (See *Turner, supra*, 482 U.S. at pp. 90-91 [96 L.Ed.2d at p. 80] [obvious and easy alternatives to examined regulation suggest an exaggerated response by institution].)

Based on the four factors, we conclude the superior court did not abuse its discretion in ordering contact visits.

13

Addressing amici curiae's concern about the impact of our decision, we do not hold that institution-wide restrictions on attorney contact visits can never be justified, only that there is substantial evidence in this case to support a determination that the restriction here is an exaggerated response. As we noted in another case involving jail visitation restrictions, our opinions on this subject are not "carved in stone" due to the shifting landscape involving jails and prisons. (See *In re Gallego* (1982) 133 Cal.App.3d 75, 85-86.)

Unless and until the superior court's order is modified based on new evidence, barrier-free meetings between inmates and their lawyers shall be available unless jail authorities or lawyers determine the meetings would create an unreasonable security risk in a given case.

## DISPOSITION

The writ petition is denied. The stay is lifted. Real parties in interest shall recover their costs on appeal.

<u>     MAURO     </u>, J.

We concur:

<u>  NICHOLSON  </u>, Acting P. J.

<u>   ROBIE     </u>, J.

Filed 5/14/15

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| COUNTY OF NEVADA et al., | C074504 |
| Petitioners, | (Super. Ct. Nos. F1100317, F12000376, F12000450, F12000504B, F13000059, F13000175, M12001105, M12001123, M12001618B, M12001672A, M12001776, M130093) |
| v. | |
| THE SUPERIOR COURT OF NEVADA COUNTY, | |
| Respondent; | |
| JACOB MICHAEL SIEGFRIED et al., | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Real Parties in Interest. | |

ORIGINAL PROCEEDING:  Petition for Writ of Mandate or Prohibition.  Writ petition denied.

Jones & Mayer, James R. Touchstone for Petitioners.

No appearance for Respondent.

Munkelt Law Office, Stephen A. Munkelt for Real Party in Interest Jacob Michael Siegfried.

1

THE COURT:

The opinion in the above-entitled matter filed on April 23, 2015, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

BY THE COURT:

    NICHOLSON           , Acting P. J.


    ROBIE               , J.


    MAURO               , J.

2