Filed 8/29/23  P. v. Green CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff, | C095893 |
| v. | (Super. Ct. No. 20FE000875) |
| DION M. GREEN, | |
| Defendant and Respondent; | |
| DEPARTMENT OF CORRECTIONS AND REHABILITATION, | |
| Objector and Appellant. | |

This appeal involves a trial court order prohibiting the Department of Corrections and Rehabilitation (CDCR) from transferring inmate Dion M. Green from California State Prison Sacramento (CSP Sacramento) to another prison while Green's Sacramento County trial remains pending.  CDCR appeals from the denial of its motion to vacate the housing order.

Green has been incarcerated in state prison since 1994 for a murder conviction. In September 2019, CDCR transferred Green to CSP Sacramento.  While there, Green and other inmates were allegedly involved in separate stabbing incidents in October and December 2019.  CDCR transferred Green to California State Prison Corcoran (CSP Corcoran) in January 2020.

1

Based on the prison stabbings, the People charged Green in February 2020 with murder and attempted murder. On March 4, 2020, the Governor declared a state of emergency due to COVID-19. On March 11, 2020, CDCR returned Green to CSP Sacramento for out-to-court[1] proceedings related to the pending criminal matter. On March 24, 2020, while Green was still housed at CSP Sacramento, the Governor issued Executive Order N-36-20 limiting prisoner transfers due to the pandemic.[2]

At a hearing in May 2020 to confirm the preliminary hearing date, Green's counsel noted that there was a current order[3] that Green remain at CSP Sacramento. Counsel asked the trial court to continue that order for the duration of Green's pending murder trial. The trial court granted Green's housing request without notice to CDCR.

Upon subsequently learning of the trial court's order, CDCR moved to vacate it. The trial court denied CDCR's motion.

CDCR appeals from the order denying its motion to vacate.[4] CDCR argues the trial court lacked authority to grant Green's request because Green did not follow the

_____

[1] "Out-to-Court" means "an inmate is temporarily removed from a facility to be brought before a court to be tried for an offense, to be examined by a grand jury or magistrate, or for any other court proceedings." (Cal. Code Regs., tit. 15, § 3000.)

[2] This court granted appellant's request for judicial notice of the Governor's COVID-19 emergency declaration and Executive Order N-36-20. (Evid. Code, §§ 452, subd. (c), 459, subd. (a).) On our own motion, we also take judicial notice of Executive Order N-08-21, which the Governor signed on June 11, 2021, lifting the restriction on prisoner transfers initially imposed in Executive Order N-36-20.

[3] We assume defense counsel was referring to the Governor's March 24, 2020 Executive Order limiting prisoner transfers. The appellate record does not include any other prior order mandating that Green remain housed at CSP Sacramento.

[4] For the purposes of determining appealability, we treat the May 2020 housing order as an order granting an injunction because the effect of the order was to prevent CDCR from transferring Green to a different prison. (Code Civ. Proc., § 525 [an injunction includes

2

required procedures to challenge his conditions of confinement. CDCR adds that even if the trial court had inherent authority to consider Green's request, it abused its discretion by applying the wrong legal standard and determining without any evidentiary support that Green was entitled to relief.

Green counters that CDCR's appeal is moot because he has since been moved to a prison medical facility to which he does not object, and in any event, the trial court had inherent authority to protect his Sixth Amendment constitutional right to counsel by requiring CDCR to house him at CSP Sacramento pending trial.

We conclude CDCR's appeal is not moot, and the trial court abused its discretion in denying CDCR's motion to vacate the housing order. We will reverse the trial court's order denying CDCR's motion to vacate, and direct the trial court to enter an order granting that motion.

## ADDITIONAL BACKGROUND

In September 2020, CSP Sacramento's classification committee referred Green's case to CDCR's Departmental Review Board (the Review Board) to evaluate his future housing based on his in-custody violent behavior and unwillingness to comply with prison rules. The Review Board is CDCR's highest level of classification review and is reserved for the most difficult prisoner housing decisions. (Cal. Code Regs., tit. 15,

---

an order commanding "a person to refrain from a particular act"].) CDCR's motion to vacate sought to dissolve that prohibition, and hence the denial of the motion to vacate was an appealable order. (Code Civ. Proc., § 904.1, subd. (a)(6); see also *People v. Hernandez* (2009) 172 Cal.App.4th 715, 720 ["a nonparty that is aggrieved by a judgment or order may become a party of record and obtain a right to appeal by moving to vacate the judgment [or order]".) Because CDCR appealed the denial of the motion to vacate within 60 days, the appeal was timely. (See e.g., Cal. Rules of Court, rule 8.308(a) [60 day deadline to appeal in criminal appeal]; rule 8.104(a) [60 to 180 days to appeal in civil appeal].) Although CDCR captioned its motion as a "motion for reconsideration and to vacate," we are not bound by the title. (See, e.g., *People v. Picklesimer* (2010) 48 Cal.4th 330, 340 [the label given a petition, action, or other pleading is not determinative].)

§ 3376.1.)[5]  In December 2020, after considering Green's case factors, disciplinary history, and increase in violent misconduct, the Review Board determined that CSP Corcoran's Long Term Restricted Housing Unit best suited Green's housing needs.

After the Governor signed Executive Order N-08-21 in June 2021, lifting the restriction on prisoner transfers, CDCR sought to implement the Review Board's decision to house Green at CSP Corcoran, but learned of the trial court's May 2020 order requiring Green to remain housed at CSP Sacramento.  In July 2021, CDCR filed a motion to vacate the court's May 2020 order, arguing the order violated its due process rights, failed to afford CDCR deference regarding where to appropriately house Green, and bypassed the mandated administrative grievance and habeas corpus procedures used to challenge conditions of confinement.

After several continuances, the trial court ordered Green to file a motion and CDCR to file a response on the housing issue.  In October 2021, Green's attorney filed a motion for continued placement at CSP Sacramento, urging the trial court to order that Green remain at the Sacramento prison during the pendency of his criminal case to safeguard his constitutional rights to counsel and a fair trial and to protect the integrity of the court proceedings.  The motion argued that Green should remain at CSP Sacramento to safeguard his constitutional rights, including his ability to consult with counsel and assist in his defense.  There were no facts asserted to support those particular arguments.  The motion also alleged that a former correctional officer at CSP Sacramento had contacted Green's counsel and warned him that Green's life was in danger and that if he were transferred out of CSP Sacramento he would be killed.  Green's attorney did not provide a supporting declaration; rather, he attached copies of three articles that discussed alleged correctional officer misconduct at CSP Sacramento.

---

[5]  Undesignated section references are to title 15 of the California Code of Regulations.

CDCR submitted declarations in opposition. The CSP Corcoran litigation coordinator, Priscilla Williams, declared that the Review Board determined Green should be housed in CSP Corcoran's Long Term Restrictive Housing Unit where he would be on single-cell status and not be housed with another inmate, he would be released for exercise in the yard alone, and he would be moved within the prison by a mandatory two-person escort and would not physically interact with other inmates. Williams said CSP Corcoran prison staff and correctional officers who interact with inmates are required by court order to wear body cameras, and such footage is retained for a minimum of 90 days and longer if necessary. Williams opined that Green would not be in danger if transferred to CSP Corcoran. Williams further attested that under the governing regulations, Green would be permitted to confidentially communicate with his counsel by mail, phone, or during legal visits. In addition, Green would be transported to Sacramento for personal appearances in the pending murder trial or he could appear by video if approved by the trial court.

CSP Sacramento litigation coordinator R. Largent reviewed the prison's records regarding attorney-client visits and communications and declared that as of November 2021, Green's counsel had scheduled one telephone call with him in July 2021, and that no other attempts to communicate by telephone or in person had been made.

Correctional Sergeant A. Huynh, who regularly investigated prison disciplinary violations and allegations of staff misconduct, investigated the allegations that Green's life would be in danger if he were transferred to CSP Corcoran. Among other things, Huynh interviewed Green. Huynh concluded there was no evidence of increased safety concerns for Green at CSP Corcoran.

At a hearing in January 2022, the trial court invited CDCR to argue its motion to vacate. During the hearing, the trial court expressed concern that it would be held accountable if something happened to Mr. Green. The trial court denied the motion to vacate.

5

DISCUSSION

I

As a threshold matter, Green contends CDCR's appeal is moot because he has since been moved from CSP Sacramento to a prison medical facility for health-related reasons, and he does not object to remaining at the medical facility for the duration of his trial.

"A court is tasked with the duty ' "to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." ' " (*In re D.P.* (2023) 14 Cal.5th 266, 276.) An appeal becomes moot when events occur that make it impossible for a reviewing court, should it decide the case in the appellant's favor, to grant him or her any effective relief. (*Ibid.*) For relief to be effective, the appellant must complain of an ongoing harm and the harm must be redressable or capable of being rectified by the outcome the appellant seeks. (*Ibid.*) A reviewing court must decide on a case-by-case basis whether subsequent events in a pending appeal make a case moot and whether its decision would affect the outcome of a subsequent proceeding. (*Ibid.*)

We agree with CDCR that the appeal is not moot. If Green's health improves and he no longer requires placement in the medical facility, the trial court's order would prevent CDCR from housing Green anywhere other than CSP Sacramento during the pending criminal proceedings. A decision from this court reversing the trial court's order could provide CDCR with effective relief.

II

CDCR contends the trial court did not have authority to grant Green's request to remain at CSP Sacramento because Green did not first exhaust his administrative remedies by filing a prison grievance challenging his conditions of confinement and he did not file a petition for writ of habeas corpus.

6

## A

The Legislature has given the Director of CDCR broad authority and the statutory obligation to classify and house every person committed to state prison following an individualized examination and study in accordance with set regulations. (See *In re Wilson* (1988) 202 Cal.App.3d 661, 665.) Penal Code section 5054 provides that "the supervision, management and control of the state prisons, and the responsibility for the care, custody, treatment, training, discipline and employment of persons confined therein are vested in the Secretary of the [CDCR]." This authority includes the mandate to promulgate regulations governing prison administration, classification, and discipline. (*In re Villa* (2013) 214 Cal.App.4th 954, 961; Pen. Code, § 5058.)

Under the prison regulations, when CDCR first receives an inmate into the prison system, the inmate's case factors are evaluated (i.e., length of sentence, criminal history, behavior during prior and current terms, including escape history) and a standardized system is used to compute a classification score to determine the inmate's initial placement in one of the state's prisons. (Pen. Code, § 5068 [CDCR Director must assign a prisoner to the institution of the appropriate security level and gender population based on the inmate's examination and other classification factors]; §§ 3375-3375.3.) The inmate's score is periodically recalculated and may determine the necessity of subsequent prison transfers. (§ 3375.4.) CDCR has broad authority to decide where to incarcerate or transfer a prisoner in accordance with classification decisions based on " 'the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.' " (*In re Wilson, supra*, 202 Cal.App.3d at p. 667.)

## B

"Under both state and federal law, a prisoner must exhaust available administrative remedies before seeking judicial relief. . . . The exhaustion requirement is jurisdictional: a court cannot hear a case before a litigant exhausts administrative

7

remedies." (*Wright v. State of California* (2004) 122 Cal.App.4th 659, 664-665 (*Wright*); see also *In re Serna* (1978) 76 Cal.App.3d 1010, 1014 ["The well established doctrine of exhaustion of administrative remedies applies to grievances lodged by prisoners [citations], even when the grievances involve an alleged constitutional violation"].)

California prison regulations provide prisoners with the ability to submit a written grievance or complaint "to dispute a [CDCR] policy, decision, action, condition, or omission . . . ." (§3481, subd. (a); see § 3480; see also *Wright, supra*, 122 Cal.App.4th at p. 667 [recognizing that under former § 3084.1, subd. (a), a prison inmate may appeal any departmental decision, action, condition, or policy adversely affecting the inmate's welfare].)[6]  An inmate who has not completed the full administrative review process has not exhausted the available administrative remedies.  (*Wright*, at p. 667; see *In re Serna, supra*, 76 Cal.App.3d at pp. 1012-1014 [inmate did not exhaust available administrative remedies because he did not request a third-level review under CDCR's inmate appeals process provided by former § 3084.1].)

## C

CDCR argues Green failed to exhaust his administrative remedies because he did not file a grievance challenging a condition of his confinement or complete the multi-level administrative review and appeal process.  (See, e.g., §§ 3481-3485.)  But, as CDCR acknowledges, section 3376.1 provides that the Review Board's classification decision is a Secretary-level decision that concludes an inmate's administrative remedies.  (§ 3376.1.)  Here, even though Green did not file a grievance, the Review Board's decision effectively exhausted Green's administrative remedies.

---

[6] Former section 3084 et seq. previously governed the prison administrative grievance process.  Those sections were repealed January 5, 2022, and replaced with section 3480 et seq., effective January 5, 2022.

Although Green did not file a document titled "petition for writ of habeas corpus" in the trial court challenging the conditions of his confinement (*People v. Villa* (2009) 45 Cal.4th 1063, 1069 [a petitioner in custody can also challenge the conditions of confinement]), Green did ask the trial court, both orally and later in writing, to address the conditions of his confinement, and a trial court has inherent authority to control proceedings pending before it and insure the orderly administration of justice (see, e.g., Elkins v. Superior Court (2007) 41 Cal.4th 1337, 1351; Code Civ. Proc., § 128, subd. (a)(8)).  In this case we will assume, without deciding, that the trial court had authority to consider Green's housing request, and we will address whether the trial court abused its discretion in granting the request and denying CDCR's motion to vacate. (See *People v. Lujan* (2012) 211 Cal.App.4th 1499, 1507 [the exercise of a trial court's inherent authority is reviewed under the abuse of discretion standard].)

III

CDCR contends that even if the trial court had inherent authority to consider Green's housing request, the trial court abused its discretion in granting the request and later refusing to vacate its order.

The abuse of discretion standard, while deferential, is not hollow.  (*People v. Uribe* (2011) 199 Cal.App.4th 836, 858.)  " ' "[I]t asks in substance whether the ruling in question 'falls outside the bounds of reason' under the applicable law and the relevant facts." ' "  (*Ibid.*)  That is, a court's exercise of discretion " ' "must be grounded in reasoned judgment and guided by legal principles and policies appropriate to the particular matter at issue." ' "  (*Ibid.*)

A trial court abuses its discretion when it bases its decision on impermissible factors or on an incorrect legal standard.  (*People v. Knoller* (2007) 41 Cal.4th 139, 156.)  It also abuses its discretion if it makes express or implied factual findings without sufficient evidentiary support.  (*County of Kern v. T.C.E.F., Inc.* (2016) 246 Cal.App.4th 301, 316.)

9

Here, there is no evidence in the appellate record to support the trial court's orders. CDCR presented the only admissible evidence on the issue of Green's safety, access to counsel, and ability to appear for the pending criminal proceedings. Unsworn statements of counsel or a nonparty in a pleading do not constitute admissible evidence. (*In re Zeth S.* (2003) 31 Cal.4th 396, 413, fn. 11; *People v. Kiney* (2007) 151 Cal.App.4th 807, 815; *Hebberd-Kulow Enterprises, Inc. v. Kelomar, Inc.* (2013) 218 Cal.App.4th 272, 283; see also, Code Civ. Proc., § 446, subd. (a).) And uncorroborated hearsay statements do not constitute substantial evidence. (See, e.g., *In re B.D.* (2007) 156 Cal.App.4th 975, 984.)

Both the federal and state Constitutions provide a criminal defendant with the right to the assistance of counsel in his defense. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15.) "An essential element of the right to counsel is the opportunity for the defendant to consult with his counsel in absolute privacy." (*People v. Torres* (1990) 218 Cal.App.3d 700, 705.) "Privacy is necessary to ensure that the defendant may safely reveal all the facts of his case to his attorney. Thus, an inmate must be afforded a reasonable opportunity to privately consult with his attorney without having other persons present." (*Ibid.*) But prison authorities can impose reasonable restrictions on visits between an inmate and his attorney if necessary for institutional security. (Pen. Code, § 2600, subd. (a); *Torres*, at pp. 706-707.)

The record contains no evidence that Green's right to counsel would be infringed if he were housed at CSP Corcoran. Likewise, there is no evidence that Green's ability to appear in court would be unreasonably impacted.

On this record, the trial court did not give CDCR sufficient deference regarding housing decisions. (Pen. Code, § 5068.) A "decision where to house inmates is at the core of prisoner administrators' expertise." (*McKune v. Lile* (2002) 536 U.S. 24, 39.) Courts "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a

corrections system and for determining the most appropriate means to accomplish them." (*Overton v. Bazzetta* (2003) 539 U.S. 126, 132.)[7]

Given the above, the trial court abused its discretion in denying CDCR's motion to vacate the housing order.

DISPOSITION

The trial court's order denying CDCR's motion to vacate is reversed, and the trial court is directed to enter an order granting the motion to vacate.

/S/

MAURO, Acting P. J.

We concur:

/S/

DUARTE, J.

/S/

HORST, J.[*]

---

[7] The trial court's concern about its personal accountability is not dispositive, as it was required to apply the law and evidence to reach a decision on the merits.

[*] Judge of the Placer County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.